**TRAILWAYS, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents.**

**No. 81–4013**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 24, 1981.

Robert J. Corber, Robert Lewis Thompson, Washington, D. C., for petitioners.

Cecelia E. Higgins, Edward J. O'Meara, I.C.C., Kenneth P. Kolson, Robert B. Nichol-

son, Attys., Appellate Section, Antitrust Div., U. S. Dept. of Justice, Washington, D. C., for respondents.

William F. King, Jeffrey A. Vogelman, John M. Ballenger and Linwood C. Major, Jr., Alexandria, Va., James R. Carter, New Orleans, La., for Greyhound Lines, Inc.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

Trailways[1] petitions to review an order of the Interstate Commerce Commission that granted an application by Greyhound to carry passengers and freight between Lincoln and Grand Island, Nebraska over Interstate Highway 80. (Previously, Greyhound had authority to do so, but over a more circuitous route.) Trailways, whose subsidiary held the only pre-existing certificate for direct service between these cities, opposed Greyhound's application on behalf of its entire nationwide system (of which this route forms a part), as did the subsidiary itself.

As a basis for reversal, Trailways principally[2] argues that the ICC erred in failing to consider evidence and to make findings with regard to the potential harm to be caused to Trailways on a systemwide (as opposed to purely local) level by the grant of the Greyhound application.

The agency's determinations principally concerned the effect of the grant of the Lincoln-Grand Island certificate to Greyhound upon the Trailways' subsidiary ("American") serving those points. The only direct evidence of economic harm introduced by Trailways concerned that to American.

In complaining of the revenue loss to the Trailways *system* (in addition to that to American), the Trailways vice president relied only upon American's loss. Appendix, 40–42. The bulk of this witness's statement was devoted to the effect of the Greyhound grant only upon the Trailways subsidiary. Aside from a cursory conclusory statement of potential adverse effect upon the other protestants,[3] the sole reference in the witness's statement to the systemwide effect

---

**1.** As used in this opinion, "Trailways" refers to the Trailways system protestants: Trailways, Inc., its 14 wholly-owned bus subsidiaries, and some of the 42 independent bus carriers, who together provide nationwide service. One of the Trailways' subsidiaries, American Bus Lines, Inc. ("American"), was the protestant with (until the grant of the Greyhound application) exclusive authority to carry passengers directly between Lincoln and Grand Island, Nebraska.

**2.** Trailways also contends that the ICC conclusion that the grant of authority would not have a material impact on the local Trailways subsidiary was arbitrary, irrational, and unsupported by substantial evidence. This contention is not substantial, under accepted principles of judicial review of such an agency determination.

Based upon evidence to such effect, the agency review board found a need for such additional direct service between Lincoln and Grand Island, and it concluded that the revenue loss to the Trailways' subsidiary ("American") serving those points (operating revenues of over thirty-seven million dollars, loss caused by diversion of traffic to Greyhound estimated by Trailways to be $168,000, later increased to $275,000) would not have a substantial material impact upon American's operations and its abilities to serve the public. On administrative review, the ICC adopted the Board's findings and conclusions. The agency determinations are supported by substantial evidence, not irrational or arbitrary, and are within the proper exercise of the agency's discretion. See, e.g., *Miller Transporters, Inc. v. United States*, 594 F.2d 463 (5th Cir. 1979).

**3.** At App. 46:

Additionally, the grant of this application would adversely impact upon the other protestants in this proceeding, who operate in through bus service utilizing bus pools with American Buslines, serving thousands of points throughout the United States. Passenger and express revenues would be diverted from their operations if Greyhound were allowed to serve between the points involved in this application and the hundreds of other nationwide points which Greyhound is currently authorized to serve, particularly in the western part of the United States.

of the Greyhound certificate was in his concluding paragraphs, which emphasized, by way of general argument without particularized support, that Greyhound was the dominent carrier in the field and that, "[a]lthough approval of this application alone will probably not cause the downfall of the entire Trailways system, approval will harm the Trailways system," App. 47, and that the issue "involves an application by the largest bus company in the world over the route of a financially weak, but essential, member of the Trailways system, the only real competitor to Greyhound," App. 46.

On the record made before it, the board took note of the systemwide issue. It noted that American alleged the application's grant would have "a disastrous impact on its operations between the involved points and adversely affect other protestants which operate through bus services utilizing bus pools with [the subsidiary]." App. 61. In rejecting this argument, the board stated: "The economic data presented by protestant are not sufficiently persuasive to enable us to determine that a grant would have a substantial material impact upon protestant's operations and its ability to serve the public." *Id.*[4] For reasons to be noted, the board's opinion and findings disclose that it adequately considered and made findings on the systemwide issue, *as raised by Trailways in the hearing before the board.*

In its petition to the ICC for administrative review, Trailways devoted a substantial portion of its complaint to the argument that the board had taken a "microscopic" view and had not considered the impact of the certificate grant on bus traffic in the Chicago-California corridor served by the Trailways system. App. 69–77. Even there, however, Trailways only complains of the $150,000–$250,000 loss in passenger revenues with origination or destination in the

two-city area involved, App. 73–74, apparently based upon the estimated revenue loss to its Lincoln-Grand Island subsidiary (American), App. 73 at note * * *, the only revenue loss as to which economic data was presented by Trailways. A principal thrust of the petition was that the Commission should consider the present Greyhound application in conjunction with the other Greyhound applications that allegedly would cumulatively have substantial impact on the Trailways systemwide operations in the Chicago-California corridor.

In its response to Trailways' petition, Greyhound correctly noted that the issue as to the Chicago-California central corridor traffic was not presented in the proceedings and that the evidence presented concerned only traffic to and from Lincoln from the West. App. 101. On ICC review, the Commission noted Trailways argument that the board had refused to recognize the present application in the large context of systemwide impact. Tr. 145. The Commission further noted that, at Trailways' request, the Commission had further already consolidated the Greyhound applications, but that consolidation of the present application was denied because of the limited and purely local nature of the authority sought. The board then denied the petition for review because the board's findings were in accordance with the evidence before the board and the applicable law.

■■■■. To reiterate, Trailways' principal complaint is that the Commission failed to consider the harm to the Trailways systemwide operations that would likely result from a grant of Greyhound's application and to make specific findings with regard to that issue. However, as the record at the hearing shows, the only specific complaint of systemwide harm here made was that relative to the economic loss to be sustained by *American*, the Trailways subsidiary, if the presently-sought similar di-

---

**4.** The word protestant as used in the singular, Trailways notes, implies that only the impact

on the subsidiary was considered.

rect-service authority were granted to Greyhound between the two cities served by American.

The issue as posed at the hearing thus concerned only the systemwide harm to be suffered through the economic harm to *American* through the grant to Greyhound of parallel authority to provide direct service to the two cities. Thus viewed, the board's reasons, which stated the contention as to systemwide effect on Trailways, stated adequate reasons for rejecting that contention: it found that the grant to Greyhound would not have a substantial material impact upon American, a finding supported by substantial evidence (see note 2).

Under the present circumstances, adequate compliance is shown with the requirement that the agency decision include "a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the *material* issues of fact, law, or discretion presented *on the record.*" Section 557(c)(A), Administrative Procedure Act, 5 U.S.C. § 557(c)(A) (emphasis supplied). The decision makes findings sufficient to resolve the material issues presented at the hearing; when read as a whole, it discloses the essential basis for the Commission's judgment. The Commission is not required to make express findings on collateral contentions considered by it—only to make findings upon the material issues of fact, law, or discretion presented to it by the administrative proceedings. *Minneapolis & St. Louis Ry. Co. v. United States*, 361 U.S. 173, 193–94, 80 S.Ct. 229, 241, 4 L.Ed.2d 223 (1959). *See also Immigration & Naturalization Service v. Bagamasbad*, 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976).

The Commission's findings are supported by substantial evidence and not arbitrary, and its decision makes adequate findings on all material issues of fact, law, or discretion.

Accordingly, we AFFIRM the decision of the Interstate Commerce Commission.

AFFIRMED.