**J. H. ROSE TRUCK LINE, INC. and C & H Transportation Co., Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 81–4286.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1982.

944

Thomas E. James, Dallas, Tex., James M. Doherty, Charles E. Munson, Jr., Austin, Tex., for petitioners.

Craig M. Keats, Atty., I. C. C., Robert B. Nicholson, Margaret G. Halpern, Attys., Dept. of Justice, Antitrust Div., Washington, D. C., for respondents.

Harold D. Miller, Jr., Luther T. Munford, Jackson, Miss., for intervenor Danny Herman Trucking, Inc.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Petitioners J. H. Rose Truck Line, Inc. and C & H Transportation Co., Inc. seek review of an Interstate Commerce Commission ("ICC") order granting intervenor Danny Herman Trucking, Inc. ("Herman") a certificate of public convenience and necessity authorizing Herman to transport general commodities (except household goods and classes A and B explosives) between points in the United States (except Alaska, Hawaii, Alabama, Florida, Georgia, Louisiana, Mississippi, Maine, New Hampshire, and Vermont). Petitioners contend that the ICC erred in granting this authority because Herman failed to establish that it is fit, willing, and able to perform the authorized services and that the grant of authority will serve a useful public purpose, responsive to a public demand or need. Further, petitioners urge that the grant of authority violates the due process of law clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 557(c), because the ICC failed to articulate in sufficient detail its reasons for granting Herman's application.

## I. The Facts

Prior to the ICC's granting of the certificate at issue, Herman operated under four-

teen fragmented certificates of authority and three grants of temporary authority. Pursuant to these certificates and temporary grants, Herman was authorized to serve origin points in 22 states and destination points in 25 states. Herman operated through 38 states in serving these points.[1] Herman was authorized to carry 22 specified commodities ranging from building supplies to hides, pet food, and processed beef. Herman's fleet consisted of 28 tractors and 35 trailers and it maintained a single terminal in Pomona, California.

In 1980, Herman filed an application with the ICC seeking authorization to transport "general commodities (except household goods ... and classes A & B explosives) between points in the United States." In support of its application, Herman submitted copies of its pre-existing certificates, a description of its equipment and facilities, a financial status report, a traffic abstract reflecting the past year's operations, and the sworn affidavit of its president, Daniel L. Herman. Petitioners submitted statements in protest of Herman's application. An ICC Review Board determined that the application should be denied because the limited nature of Herman's existing authority demonstrated that the commodity and territorial expansion requested was unjustified. Herman appealed the Review Board's decision to the Commission. The Commission reversed the Review Board and granted Herman's application. The Commission's decision gave Herman all the authority it sought with respect to commodities but, as set out above, limited its territorial scope to only 38 of the 48 states for which authority was requested. Petitioners brought the instant appeal to challenge the propriety of the ICC's grant of authority.

II. The Motor Carrier Act of 1980

This case arises under the recently enacted Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*[2] A brief review of the circumstances surrounding the enactment and subsequent history of the Act is useful. In 1935 Congress enacted the original Motor Carrier Act[3] to bring stability to the previously chaotic trucking industry. The Act empowered the ICC to regulate the industry by issuing licenses according to the public convenience and necessity. The federal government thus was able to control competition within the industry in an effort to maximize service to shippers and consumers and profits to trucking companies. In keeping with its "continuing effort ... to reduce unnecessary regulation by the Federal Government,"[4] Congress made sweeping amendments to the Motor Carrier Act in 1980. The amended Act, by specific provisions, empowered the ICC to issue broad certificates of authority to new applicants and to remove various restrictions on existing certificates. Herman applied for a certificate of new or expanded authority pursuant to § 5 of the amended Act, 49 U.S.C. § 10922(b).[5]

---

1. The twelve states in which Herman did not operate were the same 12 states exempted from the new certificate.

2. Pub.L.No.96–296, 94 Stat. 793 (1980).

3. Motor Carrier Act, ch. 498, 49 Stat. 543 (1935).

4. 94 Stat. 793 at § 2.

5. § 10922(b) directs the ICC to issue the requested certificate if it finds:
 (1)(A) that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
 (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need;
 unless the Commission finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity.
 (2) In making a finding under paragraph (1) of this subsection, the Commission shall consider and, to the extent applicable, make findings on at least the following:
 (A) the transportation policy of section 10101(a) of this title; and
 (B) the effect of issuance of the certificate on existing carriers, except that the Commission shall not find diversion of revenue or traffic from an existing carrier to be in and of itself inconsistent with the public convenience and necessity.

Shortly after the amended Act became effective, the ICC issued a series of "policy statements" and "guidelines" to be followed in the adjudication of application proceedings. In *American Trucking Associations, Inc. v. Interstate Commerce Commission*, 659 F.2d 452 (5th Cir. 1981), we reviewed these statements and guidelines and concluded that with respect to some of them, the ICC had exceeded its authority under the amended Act. *Id.* at 475. We found that many of the so-called statements and guidelines were actually rules which would authorize the Commission to grant freely virtually any application entered without regard to the traditional requirement of a showing that the applicant was fit, willing, and able to provide the services for which authority was sought. *Id.* at 465, 467, 473. In fact, the rules went so far as to require many applicants to seek and obtain certificates for authority to haul commodities they did not want to haul and to serve locations they did not want to serve. We remanded to the ICC so that it could formulate new rules in accordance with the scope of its authority under the Act.

When the ICC granted Herman's application, the now-invalidated rules were still in effect. This fact does not predetermine the result in this case, however, because our role as an appellate court is limited both by our narrow standard of review, *see* Part III *infra*, and by our recognition of the breadth of the amended Act in its policy of encouraging the granting of new and expanded certificates of authority. While we cannot overlook the fact that the ICC was operating under overbroad rules in granting Herman's certificate, as long as the grant satisfies the requirements of the Act as stated in 49 U.S.C. § 10922(b), we must affirm the ICC's decision.

### III. Standard of Review

 The ICC has broad discretion in granting applications and our standard of review of its decisions is correspondingly narrow. We may set aside the Commission's determination only if it is arbitrary, capricious, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E). Sub-stantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Refrigerated Transport Co. v. Interstate Commerce Commission*, 616 F.2d 748, 751 (5th Cir. 1980). The fact that two different conclusions could be drawn from the evidence does not prevent the agency's finding from being supported by substantial evidence. *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1074 (5th Cir. 1982). As long as the ICC considers relevant factors and articulates a rational connection between the facts found and the choice made, the decision is not arbitrary or capricious. *Watkins Motor Lines, Inc. v. Interstate Commerce Commission*, 641 F.2d 1183, 1188 (5th Cir. 1981).

### IV. Resolution of the Issues

A. Was Herman fit, willing, and able to provide the authorized services?

 Petitioners contend that the ICC erred in finding that Herman was able to perform the authorized services because Herman did not present sufficient evidence on this point. The Motor Carrier Act imposes upon the applicant the burden of producing prima facie evidence of its fitness, willingness, and ability to perform the services for which authority is requested. 49 U.S.C. § 10922(b)(1)(A). Once the applicant has made a prima facie showing, the Commission must grant the application unless those protesting the grant of authority present evidence proving that the grant will be inconsistent with the public convenience and necessity. 49 U.S.C. § 10922(b)(1). Diversion of traffic from the protestants, standing alone, is not a basis for finding that the proposed grant will be inconsistent with the public convenience and necessity. 49 U.S.C. § 10922(b)(2)(B).

 In their protesting petitions before the ICC, petitioners did not produce any evidence tending to show that Herman was unable to perform the authorized services; rather, they made blanket assertions, without reasons or supporting facts, that Herman was incapable of performing. Because they did not introduce evidence contradict-

ing Herman's offer of proof, the ICC was compelled to grant Herman's application if Herman's evidence established a prima facie case. We conclude that a prima facie case was made out by Herman.

Herman proved, through submission of its corporate records, that it was financially stable. Herman produced a traffic abstract reflecting its operations for the past year which showed that despite its limited fleet and terminal facilities, it managed to transport a wide variety of commodities virtually all over the United States.[6] Even though it operated only one terminal, Herman had arranged for its equipment to be maintained and repaired elsewhere when necessary. Further, as Herman points out, the authority granted was for irregular routes which generally require less equipment than service over regular routes.

■ In *Steere Tank Lines, Inc. v. Interstate Commerce Commission*, 675 F.2d 103 (5th Cir. 1982), we dealt with a similar situation. Steere challenged the ability of an applicant, VTS, to provide authorized services because VTS had only one terminal and a limited number of trucks. VTS produced evidence similar to that produced by Herman. It showed that it already had transported many of the commodities to many of the locations authorized by the challenged certificate. We upheld VTS's grant of authority stating that "[a] common carrier is free to carve out as large or as small a niche as it feels appropriate. * * * [T]here is no requirement [in the Motor Carrier Act] that the carrier be able, quantitatively, to perform all or any substantial part of the transportation in all covered areas [of the certificate]." 675 F.2d at 105. The same reasoning applies in the instant case. Herman need not prove its ability

with respect to every commodity or location possibly covered by the certificate. The evidence produced demonstrates sufficient ability.

■ We find that Herman's evidence was sufficient to establish a prima facie case with respect to its fitness, willingness, and ability to provide the authorized services. If petitioners knew of evidence contradicting or disproving Herman's evidence, they should have produced it before the ICC. As the record stands, we are satisfied that the ICC did not act arbitrarily, capriciously, or without substantial evidence in determining that Herman was fit, willing, and able to provide the authorized services.[7]

B. Did Herman prove that issuance of the certificate would serve a useful public purpose, responsive to a public demand or need?

Petitioners challenge the evidentiary sufficiency of the ICC's finding that the grant of authority to Herman will serve a useful *public* purpose. Specifically, petitioners argue that the lack of shipper support, while not fatal, is significant and that the affidavit of Mr. Herman, without more, is an insufficient basis for finding a *public* demand or need. Herman contends that it provided sufficient evidence to make a prima facie showing of public demand or need and that petitioners failed to produce evidence to show otherwise. We conclude that Herman's evidence was sufficient.

■ The burden of proof required of applicants with respect to public purpose was reduced substantially when Congress amended the Motor Carrier Act in 1980. Prior to the amendments, 49 U.S.C. § 10922(b)(1) imposed upon applicants the burden of showing that the proposed au-

---

6. Herman requested nationwide authority (excluding Alaska and Hawaii); however, the ICC limited the certificate to 38 of the 48 states named in the application. This shows attention by the ICC to the fact that, as a small carrier, Herman might not be able to serve the entire country.

7. In response to a question from the Court at oral argument, petitioners raised the issue of Herman's ability to carry commodities in bulk.

Petitioners are not authorized to provide bulk services themselves, and they did not raise this issue at any time before the Commission. They disputed only the portions of Herman's proposed authority which would have conflicted or interfered with the services they are authorized to provide. We need not consider this issue since it is raised for the first time on appeal.

thority would be consistent with the public convenience and necessity. In an effort to ease entry restrictions, Congress amended that section of the Act so that it now requires the applicant to make a prima facie showing that the proposed services will serve a useful public purpose, responsive to a public demand or need. Once the applicant makes this lesser showing, the amended statute creates a rebuttable presumption that the grant of authority will be consistent with the public convenience and necessity. *American Trucking*, 659 F.2d at 469. This places the burden upon those opposing the certificate to prove that the grant will be inconsistent with the public convenience and necessity.

The only evidence produced by petitioners on this issue concerned the incursion upon their financial well being that they might suffer from the granting of Herman's application. The Act specifically states that evidence directed at financial disadvantage to competitors, standing alone, is an insufficient basis for denying a certificate. 49 U.S.C. § 10922(b)(2)(B). Thus, once again our inquiry concerns the sufficiency of Herman's evidence to establish a prima facie case of public purpose, demand or need.

To establish a prima facie case that the authority sought would serve a useful public purpose, responsive to a public demand or need, Herman produced the affidavit of its president, Mr. Herman, a traffic abstract, and copies of its existing fragmented certificates. These documents showed that Herman operated within or through 38 states and transported a wide range of commodities. Due to the territorial and commodity limitations in the various certificates, however, Herman was unable to make the most efficient use of its equipment. Frequently Herman's trucks ran empty or were leased out because Herman did not have the authority to provide partic-

ular services. In his affidavit, Mr. Herman testified that many of his company's present customers had needs beyond the extent of the company's authority and that the proposed certificate would enable Herman to better serve its customers.

Petitioners concede that there are no hard and fast rules governing the types of evidence which can be used to establish the public demand or need. The testimony of shippers, while helpful, is not required. *Watkins Motor Lines*, 641 F.2d at 1189–90 ns. 11–12. The fact that Herman's evidence was entirely self-produced—*i.e.* affidavit of its president; its own records and traffic abstract—does not mean that the evidence was insufficient to establish a prima facie case of public demand or need. The sufficiency of the evidence must turn on its content, quality, and quantity. The source of the evidence may reflect upon its quality or credibility, *see e.g., Curtis, Inc. v. Interstate Commerce Commission*, 662 F.2d 680 (10th Cir. 1981); however, the fact that the source of the evidence is the applicant itself does not render the evidence unacceptable. Thus, Herman's lack of outside support for its application is not fatal.

We conclude that the evidence produced by Herman was sufficient to prove a prima facie case of public demand or need. Herman showed that without a new certificate it would be unable to run at top efficiency and to serve its customers fully. Arguably, it would have been preferable for the customers themselves to testify; however, our duty as an appellate court is limited to insuring that the evidence meets a minimum, not an optimum, level of sufficiency. Based upon Herman's evidence, the ICC was justified in concluding that the proposed grant would serve a useful public purpose, responsive to a public demand or need.[8]

---

**8.** Petitioners also question the ICC's finding that there was a rational connection between the public demand or need and the authority granted. Specifically, they challenge the validity of the ICC's determination that Herman's operation was virtually nationwide territorially and substantially varied with respect to commodities so that the new certificate did not represent a "quantum leap" from existing authority. The Commission did not act arbitrarily, capriciously, or without substantial evidence in finding Herman's operation to be broad territorially and commodity-wise and therefore the grant of authority to operate in 38 states and

## C. Adequacy of the ICC's Findings

Finally, Petitioners argue that the ICC's decision violates the due process clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 557(c), because the ICC failed to articulate in sufficient detail its reasons for granting Herman's application. Specifically, petitioners contend that the ICC disregarded the command of § 10922(b)(2)(A) to consider and make findings upon the transportation policy as expressed in 49 U.S.C. § 10101(a)(7)[9] and that it failed to explain its findings that Herman was fit, willing, and able and that the grant of authority would serve a useful public purpose.

### (1) Transportation policy

Section 10922(b)(2)(A) requires only that the Commission "consider and, to the extent applicable, make findings on . . . the transportation policy of section 10101(a);" it does not compel the ICC to discuss in detail each and every one of the eight policy factors listed in § 10101(a)(7). We conclude that the Commission fulfilled its obligation.

The ICC found that granting Herman's application would enhance Herman's competitive opportunities and would enable Herman to achieve more efficient use of its equipment. These are two of the factors listed in § 10101(a)(7) as considerations.[10] 49 U.S.C. § 10101(a)(7)(C), (D). Petitioners argue that the ICC's unsupported assertion

of these conclusions renders them infirm. We do not agree. As we explained in *Alamo Express, Inc. v. Interstate Commerce Commission*, 673 F.2d 852, 860 (5th Cir. 1982), "the ICC need not explicitly discuss each factor enumerated in § 10101. All that is necessary is that the essential basis of the ICC's rationale be clear enough so that a court can satisfy itself that the ICC has performed its function." Here, it is apparent that the ICC believed that granting Herman expanded authority would enhance the company's ability to compete and its efficiency by eliminating the limitations which previously had caused Herman to forego business opportunities and maximum efficiency of operation. We conclude that the ICC's consideration of and findings concerning the transportation policy were sufficient.

### (2) Other findings

Petitioners lastly claim that the ICC erred in failing to give explanations of its findings that the grant of authority to Herman will serve a useful public purpose and that Herman is fit, willing, and able to provide the authorized services. To sustain this challenge, the Commission's explanation need not be crystalline, as long as it enables the parties to understand the basis of the decision. *Trailways, Inc. v. Interstate Commerce Commission*, 681 F.2d 252 at 254 (5th Cir. 1982), *Central Freight Lines*, 669 F.2d at 1074. We conclude that the ICC's decision is clear enough. The

carry general commodities was not a "quantum leap" from existing authority.

9. § 10101 reads, in pertinent part, as follows: (a) . . . [T]o ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States . . . it is the policy of the United States Government to provide for the impartial regulation of the modes of transportation subject to this subtitle, and in regulating these modes—
(7) with respect to transportation of property by motor carrier, to promote competitive and efficient transportation in services in order to (A) meet the needs of shippers, receivers, and consumers; (B) allow a variety of quality and price options to meet changing market demands and the diverse require-

ments of the shipping public; (C) allow the most productive use of equipment and energy resources; (D) enable efficient and well-managed carriers to earn adequate profits, attract capital, and maintain fair wages and working conditions; (E) provide and maintain service to small communities and small shippers; (F) improve and maintain a sound, safe, and competitive privately-owned motor carrier system; (G) promote greater participation by minorities in the motor carrier system; and (H) promote intermodal transportation.

10. Petitioners did not argue that the Commission was obligated to have considered other specific factors as well.

Commission discussed the facts of Herman's existing authority and the relationship between that authority and the proposed certificate. It explained that Herman's past performance demonstrated the company's ability to fulfill its obligations under the new certificate. The finding of enhanced efficiency also was explained. A more detailed explanation may have been desirable, but it was not required by the Administrative Procedure Act or constitutional due process.[11]

### IV. Conclusion

We conclude that the ICC acted within its authority in granting Herman's certificate. Its finding on public need and applicant ability were supported by substantial evidence and were not arbitrary or capricious. The Commission adequately explained the basis of its decision. Accordingly we uphold the grant of authority.

AFFIRMED.

11. In the course of explaining its reasons for granting Herman's application, the ICC stated that the certificate would be consistent with the purposes of the Motor Carrier Act to reasonably broaden existing authority pursuant to 49 U.S.C. § 10922($h$). Petitioners seize upon the Commission's reference to § 10922(h) (restriction removals) and argue that the ICC exceeded its authority under that subsection of the Act because the authority granted Herman was not reasonable. This argument misses the point, however. Herman applied for a certificate of new or expanded authority pursuant to § 10922($b$); Herman did not apply for a restriction removal pursuant to § 10922(h). Therefore, as long as Herman's certificate satisfied the requirements of § 10922(b), we must affirm the ICC's decision regardless of a reference to § 10922(h).