**J. H. ROSE TRUCK LINE, INC. and C & H Transportation Co., Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 81–4351.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1982.

954

James M. Doherty, Charles E. Munson, Jr., Austin, Tex., for petitioners.

Dennis J. Starks, Atty., I. C. C., Nancy C. Garrison, Robert B. Nicholson, Antitrust Div., Appellate Section, Dept. of Justice, Washington, D. C., for I. C. C.

Rick A. Rude, Washington, D. C., for intervenor Van Wyk, Inc.

Before GOLDBERG, WILLIAMS, and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

## I. The Facts

Petitioners J. H. Rose Truck Line, Inc. and C & H Transportation Co., Inc. seek review of an Interstate Commerce Commission ("ICC") order granting intervenor Van Wyk, Inc. a certificate of public convenience and necessity authorizing Van Wyk to transport general commodities (except household goods, classes A and B explosives, and commodities in bulk) between points in twenty states. Prior to the ICC's granting of the subject certificates, Van Wyk operated under several fragmented certificates which authorized Van Wyk to transport a variety of commodities including meat and meat products, salt and salt products, and commodities used in the agricultural, bakery, food processing, grocery, water treatment, and institutional supply industries between points in twenty western, midwestern, northeastern, and mid-Atlantic states. In addition to operating under its own certificates, Van Wyk frequently "trip leased" its equipment to other carriers who transported an even broader range of commodities to various points in the same territory. Van Wyk owns 17 tractors and 29 trailers and maintains a terminal in Sheldon, Iowa.

Van Wyk filed an application for new authority pursuant to 49 U.S.C. § 10922(b) to authorize it to transport general commodities (except household goods, classes A & B explosives, and commodities in bulk) between points in twenty states: California, Colorado, Connecticut, Iowa, Illinois, Indiana, Kansas, Kentucky, Michigan, Minnesota, Missouri, North Dakota, Nebraska, New Jersey, New York, Ohio, Pennsylvania, South Dakota, Texas and Wisconsin. In support of its application, Van Wyk submitted copies of its fragmented certificates, a description of its equipment and facilities, its financial statement, a traffic abstract reflecting shipments pursuant to its own authority and trip leasing, and the sworn statement of its president, Arlan Van Wyk. Petitioners submitted statements in opposition to Van Wyk's application and Van Wyk responded to those statements. An ICC Review Board determined that Van Wyk's application should be granted because Van Wyk had demonstrated that it was fit, willing and able to provide the services and that the grant of authority would serve a useful public purpose, responsive to a public demand or need. The Commission upheld the Review Board's decision and granted Van Wyk's application. Petitioners brought this appeal to challenge the ICC's grant of authority.

## II. Issues

Petitioners raise four issues, three of which are virtually identical to those considered in *J. H. Rose Truck Line, Inc. v. Interstate Commerce Commission*, 683 F.2d 943, decided this same day, (hereinafter "Rose I"). First, they contend that the ICC erred in granting Van Wyk this authority because Van Wyk failed to make a prima facie showing that it is fit, willing, and able to perform the authorized service. Second, they challenge the grant of authority by asserting that there is no showing it will serve a useful public purpose, responsive to a public demand or need. Third, petitioners argue that the grant of authority violates the due process of law clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 557(c), because the ICC failed to articulate in sufficient detail its reasons for granting Van Wyk's application. Because of the legal and factual similarity between these three claims and those raised in *Rose I*, our discussion will be brief. Petitioners also raise

one issue in this case that was not considered in *Rose I*: Whether the ICC erred in finding that petitioners failed to rebut Van Wyk's prima facie case by showing that the certificate will be "inconsistent with the public convenience and necessity." 49 U.S.C. § 10922(b)(2)(B). This issue will be treated separately below.

### A. Fit, willing and able

As in *Rose I*, petitioners challenge the ICC's finding with respect to Van Wyk's ability to provide the authorized services. They contend that Van Wyk's limited equipment and terminal facilities render it unable to transport general commodities within a twenty state territory. We disagree. Van Wyk showed that it already transported a broad range of commodities within the twenty state area under its own certificates. Pursuant to its trip leasing agreements, Van Wyk's trucks carried other commodities to other places as well. This demonstrates adequately that Van Wyk is substantially able to provide the authorized services.

### B. Public Purpose

Petitioners assert that Van Wyk's evidence was insufficient to establish a prima facie case of public purpose, demand, or need. Again, petitioners argue that the lack of shipper support is significant and that Van Wyk's self-serving evidence is an insufficient basis for the Commission's findings on this issue. We addressed this problem fully in *Rose I* and concluded that the type of evidence produced by Van Wyk could support a finding of public purpose, provided that it was qualitatively sufficient.

For the most part, Van Wyk's evidence was identical in nature to that of the *Rose I* applicant. Van Wyk stated that it sought the new authority so that it could increase its efficiency and provide better service to its customers. Further, the new authority would enable Van Wyk to operate its own vehicles rather than having to lease them out to other carriers. Because Van Wyk already transported many commodities throughout the twenty state area, the new authority would not represent a "quantum leap" from existing operations. We believe this evidence supports the ICC's finding adequately.

Petitioners do not dispute the truth of Van Wyk's evidence; rather they urge us to find error in the Commission's reliance upon the traffic abstract to conclude that the grant of authority will serve a useful public purpose, because the abstract did not distinguish between shipments performed under trip leases and authorized shipments. When a truck is trip leased, it is operated under the authority of the lessee carrier and becomes, for all practical purposes, the lessee's equipment. Petitioners urge that the Commission should not have considered the trip leased shipments in assessing Van Wyk's application. Since trip leased shipments were included without distinction in the traffic abstract, petitioners insist that the Commission should not have relied upon the abstract. We are not persuaded by this argument. The Commission was well aware of the fact that trip leased shipments were included in the abstract—Van Wyk readily admitted a large part of its business was trip leasing. We do not believe the ICC was misled or deceived by the abstract. Petitioners are asking us to reweigh the evidence, giving less weight to the abstract than did the Commission. This is not our function as an appellate court. *Trailways, Inc. v. Interstate Commerce Commission*, 681 F.2d 252 at 254 (5th Cir. 1982); *Alamo Express, Inc. v. Interstate Commerce Commission*, 673 F.2d 852, 861 (5th Cir. 1982). We find no reversible error in the Commission's conclusion that the grant of authority will serve a useful public purpose, responsive to a public demand or need.

Petitioners also argue that since the commodities and routes serviced by Van Wyk through trip leases actually were assigned to other carriers, there is no public need for Van Wyk to have authority to provide the same services. We believe that fact weighs more heavily in favor of, rather than against, the grant of authority. Al-

though those services were assigned to other carriers, apparently the authorized companies were unable to provide the services with their own equipment and were forced to lease Van Wyk's trucks. This shows that there is a need for Van Wyk's services where Van Wyk was trip leasing.

### C. Adequacy of the ICC's Explanation

 Here, as in *Rose I*, the Commission adequately explained its finding under the transportation policy of § 10101 and its conclusions in general. As we have stated repeatedly, the Commission's explanation need not be crystalline, as long as it enables the parties to understand the basis of the decision. *Trailways, supra*, at 254; *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1074 (5th Cir. 1982). The ICC's decision meets this standard.

### D. Rebuttal Evidence

Petitioners contend that even if the ICC was correct in finding that Van Wyk established prima facie proof of its entitlement to the grant of authority, the Commission erred in concluding that petitioners' rebuttal evidence fell short of showing that the grant would be "inconsistent with the public convenience and necessity." 49 U.S.C. § 10922(b)(1). We hold that the Commission was justified in reaching this conclusion.

The petitioners and other protesting carriers submitted statements expressing their opposition to Van Wyk's application directed at this issue. Petitioners established that they are large trucking companies specializing in the transportation of oversized industrial equipment. They set out the extent to which their authority conflicted with Van Wyk's proposed authority, and they asserted that if Van Wyk were granted the certificate, petitioners might lose a percentage of their current business. This speculative, anticipated diversion of business, it was argued, would be contrary to the public's interest. Petitioners offered no other evidence of public detriment.

The ICC considered carefully the protesting statements of petitioners and the other carriers. The majority of its decision was devoted to this issue. The Commission stated that the protestants' evidence of potential diversion of traffic and revenues was "vague and speculative," consisting of non-specific assertions such as potential "[losses of] substantial traffic opportunities." The ICC concluded that the evidence was insufficient to rebut Van Wyk's prima facie case and accordingly it granted the certificate.

 We affirm the Commission's finding on this issue for two reasons. First, the only evidence adduced by the petitioners concerned the deleterious effect the Van Wyk certificate would have upon their operations. The Motor Carrier Act explicitly states that diversion of revenues and traffic from existing carriers, standing alone, does not establish inconsistency with the public convenience and necessity. 49 U.S.C. § 10922(b)(2)(B). Thus petitioners' evidence was legally insufficient. Second, even if this evidence could have established inconsistency with the public convenience and necessity, we would have to reweigh the evidence to reach the result urged by petitioners. Clearly, this is beyond the scope of appellate review. *Trailways, supra* at 254. The Commission's conclusion was based upon substantial evidence and was not arbitrary or capricious. Therefore, we uphold the grant of authority.

### III. Conclusion

We conclude that the ICC acted within its authority in granting Van Wyk's certificate. Its findings on public need and applicant ability were supported by substantial evidence and were not arbitrary or capricious. The Commission was justified in concluding that petitioners did not prove that the Van Wyk certificate will be inconsistent with the public convenience and necessity. The basis of the ICC's findings and conclusions was explained adequately. Accordingly we uphold the grant of authority.

AFFIRMED.