**C & H TRANSPORTATION CO., INC. and J.H. Rose Truck Line, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 81–4361.

United States Court of Appeals, Fifth Circuit.

May 13, 1983.

National Transportation Policy Act, 49 U.S.C. § 10101(a)(7)(E), (C), and (D). 673 F.2d at 860.

James M. Doherty, Austin, Tex., Thomas E. James, Dallas, Tex., for petitioners.

Craig M. Keats, I.C.C., Robert B. Nicholson, Antitrust Div., U.S. Dept. of Justice, Washington, D.C., for respondents.

David Earl Tinker, Washington, D.C., for W.P. Johnson Equipment, intervenor.

Before THORNBERRY, REAVLEY and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is a petition for review of an order of the Interstate Commerce Commission ("ICC") granting the intervenor's application for a motor common carrier certificate of convenience and necessity to transport construction, mining, industrial, electrical, and agricultural machinery and equipment between points in the United States. The primary question is whether the ICC's grant of nationwide authority to transport these commodities is supported by substantial evidence. We hold that the nationwide authority granted intervenor is not supported by substantial evidence, and that the ICC, in granting such authority, acted arbitrarily and capriciously, for there is no rational relationship between the geographical breadth of the authority granted inter-

venor and the limited geographical scope of the public need for which there is any evidentiary support in the record. We therefore vacate the ICC's order and remand the matter to it for further proceedings consistent with this opinion.

## THE FACTS

On December 11, 1980, intervenor W.P. Johnson, d/b/a W.P. Johnson Equipment and Materials ("Johnson") filed an application with the ICC requesting a certificate of convenience and necessity to transport construction, mining, industrial, electrical, and agricultural machinery and equipment, including overweight and overdimensioned machinery and equipment, over irregular routes between points in the United States. Before filing this application, Johnson held no previous motor carrier operating authority from the ICC.

Johnson's application shows that he owns a four-bay terminal in Bedford County, Virginia, six power units, and seven trailers.[1] The application also contains an undated financial statement which shows that Johnson has assets of $513,000 and a net worth of $371,000. Johnson proposed to provide a complete transportation service to the shippers utilizing his service, including transportation to remote locations such as mining and construction sites "where service is not presently available from existing carriers." The application also states "[t]he shippers supporting this application have customers throughout the United States. Therefore, in order to meet their transportation needs it is important that I be granted authority to operate between points in the United States."

Ten shippers supported Johnson's application by filing verified certificates of shipper support.[2] Several of the shippers expressed

---

1. Johnson's application shows that his fleet is comprised of the following power units and trailers: two three-axle tractors; one two- or three-axle lowboy trailer; one three- or four-axle lowboy trailer; one forty-foot flatbed trailer; one four-hopper Killebrew; one Fruehauf dump trailer; one Great Dane tank trailer; one spreader; two flatbed trucks; two pickup trucks; one D–6 dozer; one loader; one welder and miscellaneous tools for disassembly of overdimension equipment; and one single-drop trailer.

2. The supporting shippers are:

 (a) Markham Milling Company of Stewartsville, Virginia, a milling company, which testified that it would tender Johnson "farm equipment" to be transported "between points in the United States." The company said that the amount of farm equipment to be tendered Johnson "[c]annot be determined."

 (b) Bedford Farmer's Supply, Inc. of Bedford, Virginia, a seller and servicer of farm equipment, which testified that it would tender Johnson eight loads per year of "farm equipment" to be transported "[b]etween points in the United States."

 (c) Cavalier Equipment Corporation of Roanoke, Virginia, an equipment distributor, which testified that it would tender Johnson "equipment" to be transported "[b]etween points in the United States." The company said that the amount of equipment to be tendered to Johnson "[c]an not be determined."

 (d) A.E. Finley and Associates of Virginia, Inc. of Salem, Virginia, a seller and servicer of construction and industrial equipment, which testified that it would tender Johnson one load of "construction and industrial equipment" every two weeks to be transported "[b]etween points in the United States."

 (e) New River Electrical Corporation of Roanoke, Virginia, an electrical contractor, which testified that it would tender Johnson approximately 100 loads per year of "equipment used in the operation of [its] electrical contracting business" to be transported "[b]etween points in VA, WV, TN, KY, OH, and IN."

 (f) J.S. Burress, Inc. of Roanoke, Virginia, a distributor of construction equipment, which testified that it would tender Johnson approximately two loads per week of "construction equipment" to be transported "[b]etween points in the United States."

 (g) Tread Corporation of Roanoke, Virginia, a manufacturer and remanufacturer of construction, mining, and bulk handling equipment, which testified that it would tender Johnson three to four loads per month of "construction and mining equipment, and bulk handling equipment" to be transported "[b]etween points in the United States."

 (h) Branch and Associates, Inc. of Roanoke, Virginia, a general and mechanical contractor operating in the fields of road building, paving, dam building, and excavation, which testified that it would tender Johnson approximately ten loads per year of "equipment used in the operation of [its] business as a General Contractor or Mechanical Contractor" to be transported "[b]etween points in the United States."

an inability to obtain carrier commitments to transport their overdimensioned equipment in a timely manner. Eight of the supporting shippers are domiciled in Virginia, one in Delaware, and one in Texas. These certificates are each on an ICC form which contains, among other things, a blank in which the shipper is to state "Representative origins and destinations of supporting shipper's traffic." Nine of the ten supporting shippers filled in this blank in the *identical* manner, with nothing more than the words, "[b]etween points in the United States." One shipper, domiciled in Virginia, filled in this blank, "Between points in VA, WV, TN, KY, OH, and IN." None of the other information supplied by the supporting shippers, nor any other evidence in the record or of which the ICC purported to take, or may be assumed to have taken, expert administrative notice, gave any indication about the geographic scope of the shipping needs, or even of the businesses, of these shippers, or of the geographic scope of the need for Johnson's proposed transportation service.

Eleven carriers, including petitioners C & H Transportation Company, Inc. ("C & H") and J.H. Rose Truck Line, Inc. ("Rose"), two large and well-established nationwide

carriers, opposed Johnson's application based upon his alleged lack of fitness to perform a nationwide service, his alleged failure to demonstrate a need for the proposed service, and the alleged potential loss of their revenue and traffic to him. Petitioners requested an oral hearing on Johnson's application, but the ICC denied the request, because it held that there were no material facts in dispute. The ICC decided the application under its modified procedure, 49 C.F.R. 1100.43,[3] and on April 21, 1981, the ICC's Review Board No. 3 granted Johnson the authority sought in his application. On June 29, 1981, the Review Board's decision was affirmed by the ICC's Division No. 1 acting as an appellate division.[4]

## FITNESS

Petitioners' first contention is that Johnson failed to make a prima facie showing that he was able to provide a responsive nationwide service. Before issuing a certificate of public convenience and necessity, the applicant must prove, and the Commission must find, in addition to a public need for the transportation services proposed by the applicant, that the applicant is "fit, willing, and able" to provide those services.

(i) Chicago Bridge & Iron Company of New Castle, Delaware, a construction company, which testified that it would tender Johnson "construction equipment" to be transported "[b]etween points in the United States." The company said that the amount of equipment to be tendered to Johnson "[c]an not be determined."

(j) Crane and Tractor Parts, Inc. of Hutchins, Texas, a used equipment dealer, which testified that it would tender Johnson approximately one load per week of "equipment" to be transported "[b]etween points in the United States."

3. 49 C.F.R. § 1100.43 provides, in part:
"§ 1100.43 Modified procedure, how initiated. (Rule 43)
"The Commission may, in its discretion, order that a proceeding be heard under modified procedure if it appears that substantially all important issues of material fact may be resolved by means of written materials and that the efficient disposition of the proceeding can be made without oral hearing.
"(a) *Commission's initiative or by request.* Modified procedure (see Rule 5(j)) will be ordered in a proceeding upon the Commis-

sion's initiative or upon its approval of a request filed by any party that the modified procedure shall be observed."

4. After the passage of the Motor Carrier Act of 1980, the ICC issued a series of policy statements and guidelines to be followed in the adjudication of application proceedings. These statements and guidelines eased the barriers for entry into the regulated trucking industry. In *American Trucking Association, Inc. v. ICC,* 659 F.2d 452 (5th Cir.1981), *clarified and enforced through mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983), this Court reviewed those new guidelines and held with respect to some of them that the ICC had exceeded its authority under the amended Act. When the ICC granted Johnson's application, the now invalid guidelines were still in effect. This of itself does not necessarily require a reversal of this case or preclude our review. If the ICC's grant of authority satisfies the requirements of the Act, we must affirm its decision. *See J.H. Rose Truck Line, Inc. v. ICC,* 683 F.2d 943, 948 (5th Cir.1982).

49 U.S.C. § 10922(a).[5] To satisfy the "fit, willing, and able" requirement, the applicant must show (1) that it has the financial fitness or ability to perform the character of service it seeks to provide; (2) that it is willing to comply with the Interstate Commerce Act and the rules and regulations promulgated thereunder; and (3) that it has the ability to perform the proposed service in a safe and proper manner for the protection of the public. *Curtis, Inc. v. Interstate Commerce Commission,* 662 F.2d 680, 685 (10th Cir.1981).

 Petitioners argue that Johnson failed to demonstrate that he could provide a responsive nationwide service because of his limited fleet, his limited financial resources, and his failure to submit a plan of operation "consistent with the scope of the certificate requested." In short, petitioners challenge the operational feasibility, from a quantitative standpoint, of Johnson's proposal. As we have stated before, the ICC is not required to consider, as a controlling factor, the operational quantitative feasibility of an applicant's proposal to serve the needs of all or most of its potential customers throughout all the area covered by its application. *C & H Transportation Co., Inc. v. Interstate Commerce Commission,* 704 F.2d 834 (5th Cir.1983); *Steere Tank Lines, Inc. v. Interstate Commerce Commission,* 675 F.2d 103, 105 (5th Cir.1982); *Central Freight Lines, Inc. v. United States,* 669 F.2d 1063, 1071 (5th Cir.1982). *See also Star Delivery & Transfer v. United States,* 659 F.2d 81, 85–86 (7th Cir.1981).

In its decision, the Review Board considered Johnson's financial fitness to perform the proposed service, and it noted his small size, but stated that "although it is possible that applicant may not own all the equipment necessary to conduct the entire service authorized, its financial statements do not indicate that it will be unable to acquire additional equipment in the future." We are unwilling to set aside this determination by the Commission.

The record shows that Johnson's equipment is of the type appropriate to the service it seeks to perform and that Johnson has the financial resources to conduct the character of operations proposed, and to lease or purchase additional equipment when and if needed, to serve shippers upon reasonable request. Petitioners concede that Johnson has the ability to comply with the Interstate Commerce Act and the rules and regulations thereunder, and there is evidence that Johnson has the ability to perform the proposed service in a safe and proper manner. We therefore hold that the ICC applied the proper standard in finding that Johnson is "fit, willing, and able" to perform the proposed service, and that its finding is supported by substantial evidence, and is neither arbitrary nor capricious.[6]

## PUBLIC NEED

Petitioners' next contention is that there is no substantial evidence to support the

---

**5.** Section 10922(a) provides:

"(a) Except as provided in this section and section 10930(a) of this title, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II or III of chapter 105 of this title as a motor common carrier of passengers or water common carrier, respectively, if the Commission finds that—

"(1) the person is fit, willing, and able—

"(A) to provide the transportation to be authorized by the certificate; and

"(B) to comply with this subtitle and regulations of the Commission; and

"(2) the transportation to be provided under the certificate is or will be required by

the present or future public convenience and necessity."

**6.** Petitioners also argue that the ICC failed to make sufficient subsidiary findings respecting Johnson's "fitness" to perform the proposed service. While we agree with petitioners that the ICC's findings should be more detailed, the Review Board's opinion makes sufficient findings to disclose the basis for its decision. No more is required. *See J.H. Rose Truck Line, Inc. v. ICC,* 683 F.2d 943, 951–52 (5th Cir.1982); *J.H. Rose Truck Line, Inc. v. ICC,* 683 F.2d 952, 956 (5th Cir.1982); *Trailways, Inc. v. ICC,* 681 F.2d 252, 254 (5th Cir.1982); *Trailways, Inc. v. ICC,* 676 F.2d 1019, 1022 (5th Cir.1981).

ICC's geographically broad grant of authority to Johnson. We agree. While the supporting shippers' testimony establishes a need for a carrier to transport their oversized commodities, the evidence respecting the geographical scope of that need does not rationally justify the grant of nationwide authority.

■ Evidence of the geographical scope of the public need shown need not be precise, *Prefab Transit Company, Extension: Nationwide General Commodities,* 132 M.C.C. 409, 413 (1981), especially where, as in the instant case, the goods concerned do not lend themselves to precise information respecting their movements. *See Amber Delivery Service, Inc., Common Carrier Application,* 131 M.C.C. 801, 808–09 (1979). The ICC, however, must have before it substantial evidence of (or take proper expert administrative notice of facts showing) the present or future direction of the traffic the applicant proposes to transport so that the breadth of authority granted him by the ICC will reasonably conform to the public need so shown. *Prefab,* 132 M.C.C. at 413.

■ In the instant case, Johnson, in his verified statement, stated that the shippers supporting his application "have customers throughout the United States," and that he therefore needed nationwide authority to serve their needs. Nine of the ten shippers stated that their shipments moved "[b]etween points in the United States" without listing specific states or portions of the nation. Both Johnson's and the shippers' testimony provides practically no information to the ICC respecting the present or future direction of the traffic to be transported. The phrase "between points in the United States" can literally mean between points in one state. Johnson's statement that the shippers "have customers throughout the United States," while perhaps conveying a stronger connotation of interstate movements, is still uninformative in this context.

The remaining shipper, New River Electrical Corporation of Roanoke, Virginia ("New River"), however, was more precise. New River testified that it engaged in the practice of moving its machinery and equipment between points in six *contiguous* states, Virginia, West Virginia, Tennessee, Kentucky, Ohio, and Indiana. Except as noted in regard to New River, nothing in the evidence is suggestive of the geographic scope of the needs of these shippers or of the geographic scope of their businesses.

Thus, unlike the supporting shippers in *C & H Transportation Co., Inc. v. Interstate Commerce Commission,* 704 F.2d 834 (5th Cir.1983), decided this same day, who testified that their goods moved between thirty states scattered throughout all areas of the forty-eight contiguous states, and most of whom also testified that they engaged in the practice of moving their goods from purchase site to customer, or from customer to customer, with several stating their shipments were "all over the United States" and that they needed carriers authorized to "pick up and deliver anywhere in the United States," the supporting shippers here list altogether only six *contiguous* states, three of which border Virginia, and *only one* shipper, New River, the *same one* that listed those states, testified that it engaged in the practice of moving its goods from job site to job site. Since one of the shippers is located in Texas and another in Delaware, one may also infer that a need for the type of service proposed by Johnson exists *in* those states, but the inference does not reach so far as to suggest that the need exists for a carrier to haul their goods *outside* those states.[7]

A grant of nationwide authority is simply not supported to any extent by Johnson's or his supporting shippers' evidence, or by any other evidence or by anything of which we may assume the Commission properly took

---

**7.** While we recognize that it is not necessary that shippers themselves testify in support of an application, for it is not the source of the evidence but rather "its content, quality and quantity" which is crucial, *J.H. Rose Truck Line, Inc. v. ICC,* 683 F.2d 943, 950 (5th Cir.

1982), nevertheless this salutary rule does not imply that there need be no substantial evidence of public need reasonably related to the geographic scope of the authority granted. Here, we face simply an absence of any such substantial evidence.

856

administrative notice, and we can ascertain no rational connection between the limited scope of the need shown and the breadth of authority granted by the ICC to Johnson.[8] We are of the opinion that the case must therefore be remanded to the ICC so that it may reconsider the breadth of authority needed to satisfy the public need shown.[9] Any other holding, we are convinced, would mean abandonment of the statute's command that a certificate may be granted only "on the basis of evidence presented" showing that it "will serve a useful public purpose, responsive to a public demand or need." This is a step we are not prepared to take. *American Trucking Association v. Interstate Commerce Commission,* 659 F.2d 452 (5th Cir.1981), *clarified and enforced through mandamus,* 669 F.2d 957 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

### SUBSIDIARY FINDINGS

■ Petitioners' next contention is that the ICC's failure to sufficiently articulate the basis for its conclusions and findings, and its failure to make subsidiary findings

of fact on the issue of whether approval of Johnson's application would be consistent with the transportation policy of 49 U.S.C. § 10101, violated the due process clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 557(c). We disagree. "[W]e can discern in the Commission's opinion a rational basis for its treatment of the evidence." *Trailways, Inc. v. Interstate Commerce Commission,* 681 F.2d 252, 254 (5th Cir.1982). *See also J.H. Rose Truck Line, Inc. v. Interstate Commerce Commission,* 683 F.2d 952, 956 (5th Cir.1982); *Trailways, Inc. v. Interstate Commerce Commission,* 676 F.2d 1019, 1022 (5th Cir.1981). The "arbitrary and capricious" test does not require more. Petitioners' contention regarding consideration of 49 U.S.C. § 10101 has been rejected by several decisions of this Court, most recently in *J.H. Rose Truck Line, Inc. v. Interstate Commerce Commission,* 683 F.2d 943, 951 (5th Cir.1982). *See also Alamo Express, Inc. v. Interstate Commerce Commission,* 673 F.2d 852, 860 (5th Cir.1982); *Baggett Transportation Co. v. United States,* 666 F.2d 524, 530–31 (11th Cir.1982).[10]

8. In its discussion of Johnson's burden to establish a need for a nationwide service, the Review Board noted that none of the protestants challenged the shippers' statements that their traffic moved "[b]etween points in the United States." As we have indicated above, we consider this testimony to be so vague (in the overall context of the shippers' statements taken as a whole and the balance of the evidence) respecting the geographical scope of the need shown, that the protestants' failure to challenge it does not support, in any way, the relevance of those shippers' statements or the ICC's finding that a grant of nationwide authority was warranted.

9. We note the following from *Airport Shuttle Service, Inc. v. ICC,* 676 F.2d 836, 840 (D.C.Cir. 1982):
 "It simply cannot be said that the routine, laconic, and untested responses to the twelve standardized questions relating to public demand or need provide 'such relevant evidence as a reasonable mind might accept as adequate to support' a finding that the authority applied for will serve a useful public purpose in response to a public demand or need."

10. Petitioners' claims that granting the application would result in fuel and equipment inefficiencies were generically of the same kind, though the supporting presentation was much less extensive, as in *C & H Transportation Co., Inc. v. Interstate Commerce Commission,* 704 F.2d 834 (5th Cir.1983), decided this day. The relative size of the applicant and the petitioners is also much the same as in that case. The Commission noted that "none [of the protestants] shows evidence of traffic handled for the supporting shippers," that "shippers have established a need for an additional carrier," that "the benefits flowing from a grant of authority outweigh any harm which could potentially fall on the opposing carriers," and that the "action will not significantly affect ... conservation of energy resources." While the Commission could have more directly addressed these concerns, as it did in our referenced companion case, we are inclined to believe that, under the circumstances, its mentioned statements constituted minimally sufficient findings in this respect. However, we have held that one of these findings, that "shippers have established a need for an additional carrier," lacks adequate evidentiary support insofar as it pertains to the geographical scope of the authority granted, and hence in any event the case must be remanded to the Commission, and we presume new findings will be made.

## AN ORAL HEARING

Petitioners' final contention is that because there were disputed material facts, the ICC erroneously denied their request for an oral hearing. We disagree. The relevant circumstances here, and our reasons for refusing to hold that petitioners have established that the Commission prejudicially erred by denying their request for an oral hearing, are the same as those reflected in our opinion issued this day in *C & H Transportation Co., Inc. v. Interstate Commerce Commission*, 704 F.2d 834 (5th Cir.1983).

The order of the Commission granting Johnson nationwide authority is vacated and remanded to the Commission for proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

THORNBERRY, Circuit Judge, concurring in part, dissenting in part:

For the reasons outlined in my partial concurrence and partial dissent in the companion case to this one, No. 81–4269, *C & H Transportation Co., Inc. and J.H. Rose Truck Line, Inc. v. Interstate Commerce Commission and United States of America*, 704 F.2d 834, published today, I concur and dissent in this opinion.