INTERNATIONAL DETECTIVE SERVICE, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Mercer & Dunbar Armored Car Service, Intervenor Defendant.

Civ. A. No. 4860.

United States District Court,
D. Rhode Island.

July 19, 1972.

Morris J. Levin, Washington, D. C., for plaintiff.

Lincoln C. Almond, U. S. Atty., Providence, R. I., Richard Streeter, Washington, D. C., for defendant.

James K. Edwards, Providence, R. I., Peter A. Greene, Washington, D. C., for intervenor defendant.

Before McENTEE, Circuit Judge, PETTINE, Chief Judge and DAY, District Judge.

## OPINION

DAY, District Judge.

In this action the plaintiff seeks to enjoin, set aside and annul an order of the Interstate Commerce Commission which granted temporary authority as a contract carrier by motor vehicle to the intervening defendant, Mercer & Dunbar Armored Car Service, Inc. (hereinafter Mercer & Dunbar) to transport scrap platinum and platinum coated electrodes for the account of American Optical Corporation (hereinafter American Optical) over irregular routes between Southbridge, Massachusetts and Cartaret, New Jersey. Such temporary authority was granted by the Commission pursuant to the provisions of Section 210a(a) of the Interstate Commerce Act, 49 U.S.C. Section 310a(a).

Jurisdiction of this Court is invoked by the plaintiff under the provisions of Section 205(g) of the Interstate Commerce Act, 49 U.S.C. Section 305(g), 28 U.S.C. §§ 1336, 2284, 2321, 2322 and 2325 and 5 U.S.C. §§ 702–706. After

filing of the plaintiff's complaint a three judge court was duly designated, pursuant to 28 U.S.C. § 2284, to hear and determine the merits of this action as required by 28 U.S.C. § 2325.

The record of the proceedings before said Commission shows that prior to the filing of its application for said grant of temporary authority Mercer & Dunbar had transported scrap platinum and platinum coated electrodes for said American Optical over irregular routes between Southbridge, Massachusetts and Cartaret, New Jersey, for some time in the mistaken belief it had authority to do so. Upon reviewing its authority, it concluded that it lacked the requisite authority to perform such service and immediately terminated said service. On December 1, 1971, it filed with said Commission its application under the provisions of Section 210a(a) of the Interstate Commerce Act, 49 U.S.C. § 310a(a), and the Commission rules thereunder, seeking the issuance of an order granting it temporary authority for a period of 150 days to transport such scrap platinum and platinum coated electrodes for American Optical over irregular routes between Southbridge, Massachusetts and Cartaret, New Jersey. Said application was supported by American Optical whose traffic manager submitted to said Commission a certified statement setting forth its immediate and urgent need for the proposed service, and relating its unsatisfactory experience with a prior carrier thereof. Said statement also expressed its complete satisfaction with the carrier service rendered by Mercer & Dunbar until the latter terminated its services. It further stated that American Optical had endeavored to obtain similar service from two other carriers, who apparently lacked authority from said Commission to perform such service between the points involved.

Notice of the filing of said application was published in the Federal Register on December 10, 1971, and, thereafter, on December 20, 1971, the plaintiff filed its protest to said application. In its protest plaintiff alleged that the performance of said service by Mercer & Dunbar was "without a shadow of authority or color of right and was blatantly illegal". It alleged that "such illegal operations demonstrate the lack of fitness of the applicant, which by itself requires a denial of the pending application". Additionally it alleged that on February 8, 1971, it had applied to the Commission for temporary authority to transport, as a common carrier, bullion and precious metals between points in Rhode Island, Massachusetts, Connecticut, New York and New Jersey, and that a protest to that application was filed by Mercer & Dunbar on March 1, 1971. It also alleged therein that it applied for permanent authority, as a common carrier, to transport precious metals (among other commodities) between the same points, as in said application for temporary authority on April 15, 1971 and that Mercer & Dunbar filed a protest to said application and has continued to vigorously oppose said application. It also claims that when Mercer & Dunbar stated in its application, filed December 1, 1971, in response to item "7" therein that it "has not" opposed any other carrier's application to perform the proposed service, such answer was false and is a further indication of its unfitness. It further claimed that it had contacted American Optical on December 31, 1971 and advised it of the availability of its services.

On December 27, 1971, counsel for Mercer & Dunbar sent a letter to the Commission in which he denied many of the allegations made by the plaintiff in its protest. He also clarified the description of the "scrap platinum" to be transported by declaring that it would be in the form of a platinum ash and as such is not a "precious metal". He further stated it was his belief that the platinum coated electrodes could not be classified as "precious metals" within the plaintiff's grant of temporary authority.

The Commission, acting through its Motor Carrier Board, on January 27,

1972, rejected the plaintiff's protest and found that there was an immediate and urgent need by American Optical for the services proposed by Mercer & Dunbar and that there was no carrier service available which was capable of filling such need. It granted the latter temporary authority as a contract carrier to transport said scrap platinum and platinum coated electrodes between the points requested for a period of 90 days commencing no sooner than March 1, 1972. An order documenting its decision was served on February 1, 1972.

On February 2, 1972, the plaintiff filed with the Commission a "Petition For Reconsideration and Stay of Order Providing Temporary Authority" and a "Petition For Immediate Consideration and Expedited Action". In said petitions the plaintiff contended that the Commission erred in finding that there was "an immediate and urgent need" for the proposed service and in finding there was no carrier service available capable of meeting such need. It also contended that the Commission erred in not finding Mercer & Dunbar unfit to provide the proposed service.

Subsequently, on February 25, 1972, the Commission (Appellate Division 1) denied both of the plaintiff's petitions. An order was served on the parties on February 28, 1972. The plaintiff then filed the instant action on March 1, 1972.

In its complaint the plaintiff alleges that said orders granting said temporary authority to Mercer & Dunbar is based upon a misinterpretation of law, is contrary to the only evidence of record, and is arbitrary and capricious, constituting an abuse of administrative discretion.

Said Section 210a(a) of the Interstate Commerce Act, 49 U.S.C. § 310a(a), reads as follows:

"(a) To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commisison may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter."

█ It is well settled that the scope of review of orders of the Commission granting temporary authority under Section 210a(a) of the Interstate Commerce Act, 49 U.S.C. § 310a(a), is limited. Such orders need not be supported by substantial evidence. They must be upheld by the courts if they are supported by some evidence and the Commission's action is not found to be arbitrary or capricious. Navajo Freight Lines, Inc. v. United States, 320 F.Supp. 318 (D.New Mexico 1970); Bell Lines, Inc. v. United States, 306 F.Supp. 209 (S.D. W.Va.1969), aff'd per curiam, 397 U.S. 818, 90 S.Ct. 1517, 25 L.Ed.2d 804 (1970); Superior Trucking Company v. United States, 302 F.Supp. 257 (N.D. Ga.1969); Merchants Delivery Co. v. United States, 265 F.Supp. 669 (W.D. Mo.1967); Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D. Ohio 1966).

Said Section 210a(a) of said Act clearly authorizes the Commission to issue grants of temporary authority to provide carrier service when it finds that (1) there is an immediate and urgent need for such service and (2) there is no carrier service available and capable of meeting such need.

█ Plaintiff apparently concedes that the record of the proceedings before the Commission establishes the immediate and urgent need of American Optical, the shipper, for the carrier service involved herein. It contends

that the record upon which the Commission based its order does not establish the absence of an available carrier service between the points involved herein that was capable of meeting its need. In support of this contention it urges that it was authorized to furnish such service under its grant of temporary authority and that it had advised American Optical of the availability of its service between the points involved herein. The Commission in its order granting said temporary authority to Mercer & Dunbar found "that there is an immediate and urgent need for the carrier service described in the appendix hereto . . ." The appendix reads: "Type of carrier-Contract". There are very significant differences in the services which Mercer & Dunbar, a contract carrier, may render.[1] Mercer & Dunbar may design a carrier service to meet one shipper's needs under a contract with that shipper. Plaintiff, as a common carrier, must hold itself out to serve the general public and may not discriminate between the various shippers it serves.[2] Hence, to any extent that the needs of American Optical may require preferential or special treatment only Mercer & Dunbar may provide it.

Although the plaintiff maintains that it, as a common carrier, is able to satisfy American Optical's particular needs for carrier service, it made no affirmative showing it could do so. American Optical's rejection of its belated offer of service reflects its doubts that plaintiff was in a position to do so.

Plaintiff's assertion that it has authority to provide the service required by American Optical under its recently acquired temporary authority to transport "bullion and precious metals" is clearly open to question. It contends that the "precious metals" portion of its authority would allow it to transport "scrap platinum and platinum coated electrodes" for Americal Optical. In support of this contention it relies upon Garrett Freight Lines, Inc.—Modification 106 M.C.C. 390 (1968). In our opinion plaintiff's contention is not supported by that decision. In that decision the Commission stated at page 399:

"While we believe that the term 'precious metals' would include such things as balls, bars, grains, strips, wire or scrap of the base metal, we do not wish to imply that manufactured items would likewise be included. Fabricated metal products that are alloys of 'precious metals' might be 'high value' products because of the manufactured value put into the finished product but the same articles would not be of 'unusual value' because of their physical form and the 'precious metal' in the alloy."

It is undisputed that said "platinum coated electrodes" are manufactured or fabricated items. The supporting shipper's letter refers to "shipments of platinum fabricated parts and wire" and to "refined platinum which is coated on fabricated parts and wire". In our opinion there is a grave question as to whether these commodities are within the Commission's definition of precious metals and hence could be lawfully transported by the plaintiff under its grant of temporary authority. While the record does not affirmatively indicate whether the Commission based its decision upon its interpretation of the plaintiff's temporary authority, it is well settled that such an interpretation is primarily a matter within the expertise of the Commission and should not be disturbed by the Courts. McKenzie

1. The differences are established by statute. Contract carriers are defined in Section 203(a) (15) of the Act (49 U.S.C. § 303(a) (15) while common carriers are defined in Section 203(a) (14) of the Act (49 U.S.C. § 303(a) (14).

2. Section 216(d) of the Act (49 U.S.C. Section 316(d) declares: "It shall be unlawful for any common carrier by motor vehicle . . . to make, give, or cause any undue or unreasonable preference or advantage to any particular person . . . in any respect whatsoever." . . .

Tank Lines, Inc. v. United States, 211 F.Supp. 876 (N.D.Fla.1962).

Plaintiff also contends that the Commission's order should be set aside because Mercer & Dunbar is unfit. Clearly the determination of the unfitness of an applicant for temporary authority is within the discretion of the Commission under 49 C.F.R. § 1131.4(b) (8) which reads as follows:

"*General bases for disapproval.* Applications for temporary authority may be denied for the following reasons:

\*    \*    \*    \*    \*    \*

(ii) Unfitness of the applicant."

In support of its contention that Mercer & Dunbar is unfit, plaintiff claims that (1) the answer of Mercer & Dunbar to item "7" in its application was false, and (2) Mercer & Dunbar transported said scrap platinum and platinum coated electrodes without first having secured the requisite authority from said Commission.

Plaintiff's claim that the answer of Mercer & Dunbar to item "7" was false is based upon its assumption that the applicant was applying for grant of temporary authority to transport "precious metals". No such grant of authority was being sought by the applicant, and by its order, it is clear that the Commission did not consider that it was seeking such temporary authority.

The record clearly establishes that the Commission was fully aware that Mercer & Dunbar had for a brief period transported said scrap platinum and platinum coated electrodes for American Optical and that, upon its discovery of its lack of authority to do so, had terminated its service on its own volition and promptly thereafter had filed its application with the Commission. The Commission rejected the plaintiff's claim that this activity rendered Mercer & Dunbar unfit for a grant of temporary authority. The determination of the applicant's fitness was peculiarly within the discretion of the Commission and should not be reversed unless it is found to be arbitrary or capricious. Consolidated Carriers Corp. v. United States, 321 F.Supp. 1098 (S.D.N.Y. 1970), aff'd per curiam, 402 U.S. 901, 91 S.Ct. 1375, 28 L.Ed.2d 642 (1971); Armored Carrier Corp. v. United States, 260 F.Supp. 612 (E.D.N.Y.1966), aff'd per curiam, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967). There is nothing in the record that would warrant a finding that the Commission acted arbitrarily or capriciously in rejecting the plaintiff's claim that Mercer & Dunbar was unfit.

After a careful review of the record of the proceedings before the Commission, this Court concludes that there was ample evidence to warrant its finding that there was an immediate and urgent need for the services for which it granted temporary authority to Mercer & Dunbar and that it did not act arbitrarily or capriciously in granting Mercer & Dunbar temporary authority for such service.

Accordingly, said order of the Commission is affirmed and judgment shall be entered in favor of the defendants.