685 F.2d 329
 CONTAINERFREIGHT CORPORATION, Ditto Freight Lines, Lodi
Truck Service, Inc., and Ted Peters Trucking
Company, Inc., Petitioners,
v.
The UNITED STATES of America and Interstate Commerce
Commission, Respondents,
and
Manlowe United, Inc., Intervening Respondent.
 No. 81-7514.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1982.
Decided Aug. 26, 1982.
 
 Ronald C. Chauvel, Handler, Baker, Greene & Taylor, George M. Carr, San Francisco, Cal., for petitioners.
 Edward J. O'Meara, Washington, D. C., argued, for respondents; Robert B. Nicholson, Washington, D. C., on brief.
 On Petition for Review of an Order of the Interstate Commerce Commission.
 Before MERRILL, CHOY and HUG, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 Petitioners Containerfreight Corporation, et al., petition for review of an order of the Interstate Commerce Commission authorizing Manlowe United, Inc. to transport, between points in California, general commodities having a prior or subsequent movement by water or rail. Manlowe has been granted leave to intervene. Jurisdiction is based on 28 U.S.C. §§ 2321, 2342.
 
 
 2
 In December 1980 Manlowe filed its application with the Commission. The Commission considered the application using its "modified procedure" with the parties submitting their evidence and arguments in written form. See 49 C.F.R. § 1100.43-.52 (1981). Three shippers filed statements in support of the application; five motor carriers filed statements protesting the application.[1] A Commission review board granted the application for state-wide authority in a decision served on April 16, 1981. On petition for review by the protestants, the Commission affirmed the review board's decision on June 24, 1981. Because the protestants had raised "serious allegations of misconduct on the part of applicant's president," however, the Commission limited Manlowe's authorization to a two-year term. The protestants now petition for judicial review.
 
 
 3
 * Prior to the adoption by Congress of the Motor Carrier Act of 1980 (the 1980 Act), Pub.L. No. 96-296, 94 Stat. 793, the primary statutory standard which controlled the Commission in licensing motor carriers was that the proposed service "be required by the present or future public convenience and necessity." 49 U.S.C. § 10922(a) (Supp. II 1978). The guidelines for the grants of certificates of public convenience and necessity were promulgated by the Commission in Pan American Bus Lines Operation, 1 M.C.C. 190, 203 (1936):
 
 
 4
 The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest.
 
 
 5
 The 1980 Act "modifie(d) the traditional public convenience and necessity test to make it easier for motor common carriers of property to obtain operating certificates from the Commission." H.R.Rep. No. 96-1069, 96th Cong., 2nd Sess. 3, reprinted in (1980) U.S.Code Cong. & Ad.News 2283, 2285. The Commission is now instructed to grant the requested authorization if it finds:
 
 
 6
 (A) that the (applicant) is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
 
 
 7
 (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need....
 
 
 8
 49 U.S.C. § 10922(b)(1). With respect to transportation of property by motor carrier the 1980 Act expressly enunciates a policy "to promote competitive and efficient transportation services." 49 U.S.C. § 10101(a)(7).
 
 
 9
 Notwithstanding the relaxation of guidelines under the 1980 Act, the Administrative Procedure Act (APA) requires that the Commission's decisions include "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record...." 5 U.S.C. § 557(c)(3)(A). Under the 1980 Act it is still essential that the Commission, before granting an operating certificate, (1) find "that the service proposed will serve a useful public purpose, responsive to a public demand or need ...," 49 U.S.C. § 10922(b)(1)(B); (2) find that the applicant is "fit, willing, and able to provide the transportation to be authorized ...," 49 U.S.C. § 10922(b)(1)(A); and (3) "consider and, to the extent applicable, make findings on" the National Transportation Policy, 49 U.S.C. § 10922(b)(2)(A), among the goals of which are to promote a safe, economical, efficient and competitive transportation system, 49 U.S.C. § 10101(a)(1)-(7). Applicants for common carrier authority bear the initial burden of making a showing sufficient to support the required findings. Baggett Transportation Co. v. United States, 666 F.2d 524, 526-27 (11th Cir. 1982).
 
 
 10
 The Commission argues that it has satisfied the requirements of the APA and the 1980 Act since its rationale "may reasonably be discerned." Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). We cannot agree. The Commission made no findings concerning (1) the need for Manlowe's services in the greater part of the state; (2) Manlowe's fitness as a motor carrier; and (3) the goals of the National Transportation Policy. Such findings are essential to enable a reviewing court "to perform its function of ascertaining that the ultimate conclusions are derived from the record before the agency and are not the result of discretion exercised in an arbitrary and capricious manner." Argo-Collier Truck Lines Corp. v. United States, 611 F.2d 149, 152 (6th Cir. 1979).
 
 II
 
 11
 Further we conclude that the Commission's decision is not supported by the requisite substantial evidence. The evidence of need presented in support of Manlowe's application was scant. Three shippers submitted statements. The first, Interlake, Inc., manufactures a single product line (strapping and packaging materials) and ships from Oakland to Pittsburg, California, a distance of some 30 miles. The second, Twin City Piggyback, Inc., is a shipper's agent which transports what it described as "(g)eneral (c)ommodities which will move in piggyback intermodal service" from railroad yards in the San Francisco Bay Area to destinations in Sacramento, Oakland, Richmond, Modesto, and Fresno, California. The third, Senco Products, manufactures a single product (fastening systems) and ships from Oakland to San Leandro, California, a distance of less than 10 miles. Each shipper stated that it would tender traffic to Manlowe and expected Manlowe to provide good service.
 
 
 12
 On the basis of these statements the Commission found:
 
 
 13
 Our review of the evidence in this proceeding, including the appeal and reply, leads us to conclude that applicant has demonstrated that its proposed operation will serve a useful public purpose, responsive to a public demand or need. Accordingly, we here affirm the Review Board's findings relative to the issue of need.
 
 The Review Board had found:
 
 14
 The evidence of record demonstrates that applicant has established a prima facie case of need for the service described in the appendix. The three supporting shippers ... show a need for the transportation of general commodities between points in California. They require timed deliveries and show a substantial volume of traffic to be tendered to applicant.
 
 
 15
 In our judgment, these findings do not suffice as support for a certificate with the state-wide geographic scope of that here granted.[2] Applications have been denied to the extent that they exceed the demonstrated need for the proposed services. Refrigerated Transport Co., Inc. v. ICC, 663 F.2d 528, 531 (5th Cir. 1981); Green Field Transportation Co., Inc., Extension-General Commodities, 132 M.C.C. 485, 492 (1981), petition for review pending sub nom. Refrigerated Transport Co., Inc. v. ICC, No. 81-7333 (5th Cir. filed Apr. 21, 1981).
 
 
 16
 In American Trucking Associations, Inc. v. ICC, 659 F.2d 452, 475 (5th Cir. 1981) the court stated, "a grant of statewide authority has never needed support from all, or even most, municipalities in the state" but must have "support from a representative number of municipalities in the state." Manlowe's showing of need in a portion of Northern California is not "representative" of a need throughout the state. The statements of the supporting shippers on their face demonstrate a need only for services in the San Francisco Bay Area and at most to points between Sacramento in the North and Fresno in the South.
 
 
 17
 If in the judgment of the Commission, circumstances other than the need of supporting shippers justified a statewide certificate, findings to such effect should be made.[3] In Refrigerated Transport Co., Inc. v. ICC, supra, the court stated:
 
 
 18
 (W)e can find no direct evidence, much less substantial evidence, in the statement of the supporting shipper as to any need for the authority sought outside the four states comprising its production region. There may be such need, and there may be such evidence, but it is not disclosed in the record before us. It would be an abdication of our reviewing function not to hold the Commission to a reviewable determination on the record as to the appropriate scope of the authority for which evidence of need has been adduced.
 
 
 19
 663 F.2d at 531.
 
 III
 
 20
 With reference to the fitness finding the purpose of the inquiry is to protect the public "from carriers whose conduct demonstrates an unwillingness to operate in accordance with the requirements of regulation." Speedway Carriers, Inc., Extension-Pesticides, 128 M.C.C. 60, 66 (1977).
 
 
 21
 The Commission found Manlowe fit despite allegations by petitioners that its president had misappropriated funds from another carrier and had made false statements in his application statement. On this point the Commission stated:
 
 
 22
 (W)e note that the evidence of protestant Cal-Pacific raises serious allegations of misconduct on the part of applicant's president, Mr. James Manlowe, involving fraud, misrepresentation, and embezzlement. We also note that these charges, as well as counter-charges ..., are the basis for (a) civil complaint.... We recognize that the fact of the suit, alone, cannot be probative with respect to any issues now before the Commission; nevertheless, the allegations against applicant's president, if proven, would have relevance to the issue of his company's fitness and ability to conduct the operations here proposed. Accordingly, we limit our grant of authority to a two-year term.... This matter will also be referred to the Office of Consumer Protection of the Interstate Commerce Commission for whatever action it may find appropriate in light of the record.
 
 
 23
 Because Manlowe disputed the allegations, the Commission contends that petitioners are essentially challenging the Commission's weighing of the evidence. There is no indication in the record, however, that the Commission engaged in any weighing at all. Instead it simply referred the allegations to its Consumer Protection Office. This response was not in keeping with the Commission's statutory responsibility to assess the fitness of motor carrier applicants. " 'The Commission ... is required to give reasons for its actions if the protestants raise a material disputed issue or if the existence of a material issue is apparent from the proceedings.' " Central Freight Lines, Inc. v. United States, 669 F.2d 1063, 1074 (5th Cir. 1982), quoting Humboldt Express, Inc. v. ICC, 567 F.2d 1134, 1139 (D.C.Cir.1977). See 5 U.S.C. § 557(c).
 
 
 24
 We reject the Commission's argument that limiting Manlowe's authorization to a two-year period was an appropriate interim measure. As one court has stated, "Because the applicant was unfit to receive a grant of permanent operating authority, it was also unfit to receive the limited-term certificate actually granted by the Commission." Curtis v. ICC, 662 F.2d 680, 689 (10th Cir. 1981). As long as proceedings on the civil complaint to which the Commission referred remain pending, that complaint constitutes a cloud on Manlowe's fitness which would have to be resolved, either in the civil proceeding or by the Commission, if fitness were to be found.
 
 
 25
 The order of the Commission is vacated and the matter is remanded for further proceedings.
 
 
 
 [1]
 The protestants were the four petitioners in this proceeding and Nationwide Enterprises, Inc., doing business as Cal-Pacific Company. The latter carrier has entered voluntary bankruptcy and is not a party to this proceeding
 
 
 [2]
 Petitioners also argue that the bald statement of Twin City Piggyback that it transports "(g)eneral (c)ommodities" is not sufficient to support the Commission's grant of general commodity authority to Manlowe. We need not reach this question
 
 
 [3]
 For example, the Commission now argues that a state-wide grant of authority was appropriate to permit Manlowe to realize operating efficiencies. No findings in this regard were made, however