752 F.2d 419
 CONTAINERFREIGHT CORPORATION, Lodi Truck Service, Inc.,
Ditto Freight Lines, and Ted Peters Trucking
Company, Inc., Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
 No. 83-7221.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 1, 1984.
Decided Jan. 22, 1985.
 
 Ronald C. Chauvel, Handler, Baker, Greene & Taylor, San Francisco, Cal., for petitioners.
 Edward J. O'Meara, Washington, D.C., for respondents.
 Petition for Review of an Order Of The Interstate Commerce Commission.
 Before CHOY, MERRILL and HUG, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Petitioners Containerfreight Corporation, et al., again petition this court for review of an order of the Interstate Commerce Commission granting to Manlowe United, Inc. ("Manlowe") authority to transport, between points in California, general commodities having a prior or subsequent movement by water or rail. We vacate the Commission's order and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Manlowe first filed its application with the Commission in December 1980. The Commission considered the application under its "modified procedure" with the parties submitting their evidence and arguments in written form. See 49 C.F.R. Sec. 1100.43-.52 (1981). Three shippers filed statements in support of the application; five motor carriers filed statements protesting it.[1] A Commission review board granted the application for statewide authority in a decision served on April 16, 1981. Upon petition for review by the protestants, the Commission affirmed the decision on June 24, 1981, but limited Manlowe's authorization to a two-year term because the protestants had raised "serious allegations of misconduct on the part of applicant's president."
 
 
 3
 The protestants sought judicial review before this court, which granted Manlowe leave to intervene. Our decision, entered August 26, 1982 in Containerfreight Corp. v. United States, 685 F.2d 329 (9th Cir.1982) ("Containerfreight I "), vacated the Commission's grant of authority and remanded the matter for further proceedings. We found that the Commission's order was not supported by substantial evidence as to the public need for Manlowe's services, id. at 331-32, and that as to Manlowe's fitness, the Commission had not truly weighed the evidence, id. at 332-33.
 
 
 4
 On October 21, 1982, the Commission reopened the application proceeding for receipt of additional evidence. The applicant and the petitioners submitted verified statements. The applicant submitted no additional supporting shipper statements, nor did it produce any marketing studies or traffic projections regarding the statewide public need for its services. In a decision served on February 24, 1983, the Commission again granted the full authority sought by applicant. The protestants petition anew for judicial review.
 
 
 5
 The Motor Carrier Act of 1980 ("the 1980 Act") directs the Commission to grant requested operating certificates for motor common carriers of property if it finds:
 
 
 6
 (A) that the [applicant] is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission; and
 
 
 7
 (B) on the basis of evidence presented by persons supporting the issuance of the certificate, that the service proposed will serve a useful public purpose, responsive to a public demand or need ....
 
 
 8
 49 U.S.C. Sec. 10922(b)(1). The 1980 Act voices a policy "with respect to transportation of property by motor carrier, to promote competitive and efficient transportation services," 49 U.S.C. Sec. 10101(a)(2), thus easing entry for new carriers.
 
 
 9
 Congress did not see fit, however, to deregulate the trucking industry entirely.[2] Notwithstanding the relaxation of entry standards under the 1980 Act, therefore, the Administrative Procedure Act ("APA") still directs this court to set aside final orders of the Commission which are "arbitrary, capricious, [or]... unsupported by substantial evidence." 5 U.S.C. Sec. 706(2)(A), (E). "Although the substantial evidence standard of review is relatively deferential to the agency factfinder, our review still must be 'searching and careful, subjecting the agency's decision to close judicial scrutiny.' " Jackson v. Donovan, No. 82-7477, slip op. at 1259, (9th Cir. March 6, 1984) (quoting Memorial, Inc. v. Harris, 655 F.2d 905, 912 (9th Cir.1980)).
 
 
 10
 The APA also requires that the Commission's decisions include "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record ...." 5 U.S.C. Sec. 557(c)(3)(A). Under the 1980 Act, therefore, it is still essential that the Commission, before granting an operating certificate, "consider and, to the extent applicable, make findings on" (1) the national transportation policy set forth in 49 U.S.C. Sec. 10101(a)(1)-(2); and (2) "the effect of issuance of the certificate on existing carriers, ..." 49 U.S.C. Sec. 10922(b)(2)(A), (B).II. DISCUSSION
 
 A. Substantial Evidence in the Record
 
 11
 Petitioners press two chief sufficiency-of-evidence arguments. First, they argue that the Commission's finding of public need for statewide authority lacks substantial evidence in the record to support it, and second, that the Commission's finding of fitness is similarly unsupported. We accept the first argument but reject the second.
 
 
 12
 The applicant for common carrier authority bears the initial burden of making out a prima facie case that its service is needed and that it is fit to perform it. Containerfreight I, 685 F.2d at 331. Only after the applicant makes out a prima facie case does the burden shift to protestants to show that authorization would not be consistent with the public convenience and necessity. See Steere Tank Lines, Inc. v. I.C.C., 724 F.2d 472, 475 (5th Cir.1984). Because we hold that Manlowe never made out a threshold case of statewide need for its services, we need not reach the question whether petitioners in turn carried their heavier burden.
 
 
 13
 1. "Useful Public Purpose, Responsive to a Public Demand or Need"
 
 
 14
 Petitioners argue that the Commission erred in granting Manlowe California statewide operating authority where the record lacks substantial evidence of statewide public need. Under the 1980 Act, the Commission may infer from an unrebutted showing of representative need that the need extends beyond the localities for which evidence was given.[3] Refrigerated Transport Co. v. I.C.C., 686 F.2d 881, 887 (11th Cir.1982). In reviewing the scope of authority granted, we ask whether an inference of similarity throughout the area embraced by the applicant's certificate may rationally be drawn from the evidence presented. Id.
 
 
 15
 Our review of the record discloses no substantial evidence "which is sufficiently representative of the transportation needs of the shipping public to enable [the Commission] to make an informed determination of the public interest," Art Pape Transfer, Inc., Extension--Commodities in End-Dump Vehicles, 132 M.C.C. 84, 96 (1980). We cannot find that an inference of similarity throughout the area embraced by Manlowe's certificate could rationally be drawn from the evidence presented.
 
 
 16
 The evidence here consisted chiefly of three supporting shippers' statements. Only one of these listed destinations more than thirty miles from railroad yards in the San Francisco Bay Area, the origin points common to all three shippers. That statement, submitted by shippers' agent Twin City Piggyback, Inc., lists only three destinations more than thirty miles from these same origin points: Modesto, Fresno, and Sacramento, California. Only Fresno is more than 100 miles from San Francisco. Twin City Piggyback estimated that it would tender eight to twelve trailerloads per month to applicant Manlowe. Nothing in the record indicates how many (or few) of these loads would be bound for Fresno. No additional evidence presented to the Commission since our decision in Containerfreight I leads us to change our previous conclusion that "[t]he statements of the supporting shippers on their face demonstrate a need only for services in the San Francisco Bay Area and at most to points between Sacramento in the North and Fresno in the South." 685 F.2d at 332.
 
 
 17
 Although shipper statements are not the exclusive means by which an applicant can show the need for its services, see J.H. Rose Truck Line, Inc. v. I.C.C., 683 F.2d 943 (5th Cir.1982); Art Pape Transfer, 32 M.C.C. at 94, the weight given to evidence other than shipper statements depends on its quality, its quantity, and the credibility of its source. See J.H. Rose, 683 F.2d at 950. "Some hard information or genuine proposal is required. Mere assertions alone are insufficient." Pre-Fab Transit Company Extension--Nationwide General Commodities, 132 M.C.C. 409, 414 (1981).[4]
 
 
 18
 In this proceeding, Manlowe has produced no sufficient hard information or genuine proposal. It submitted no statistical evidence or other attempt to buttress the bare assertion that it "is requesting the entire State of California in order to efficiently utilize its equipment and provide total service to the supporting shippers even though the primary service area will initially be Northern California." Similarly, in the years since it first applied for operating authority, Manlowe has produced no record evidence to substantiate the claim that its proposed "destinations, from past experience, are likely to be in any community that is able to receive and warehouse the products contained in the trailers."
 
 
 19
 In granting Manlowe's application, the Commission relied on policy considerations and the general rule that "[b]road grants allow carriers to meet changing needs of shippers and receivers and the diverse demands of the market and the shipping public, and to take advantage of technological advances and changing industrial patterns." Manlowe United, Inc., Common Carrier Application, No. MC-153155 F (February 14, 1983) ("Order"), at 6. The Commission also found that two goals of the national transportation policy, the promotion of intermodal transportation and of service to small communities, would be served by the grant of authority.
 
 
 20
 The Commission stated in its Order that it was not limited to considering only shipper support or traffic moving between specific points, but could also "consider evidence of other benefits from granting broad authority that will serve a useful public purpose." Id. We are aware that the Commission, as an administrative agency, may "decide cases based on official notice or expertise not strictly contained within the four corners of the information submitted by the parties." Pre-Fab, 132 M.C.C. at 412. The Commission, however, may not simply adopt Manlowe's assertions of public need. The Commission must give some reasons why it wholly credited Manlowe's claims, in the face of the protestants' conflicting claims. Recasting the applicant's claims as "findings" does not suffice.
 
 
 21
 Moreover, policy considerations alone cannot support a finding of public need for statewide authority. Rather, the Commission must look to the particular facts of each case in making a determination of public need. See Green Field Transport Co., Extension--General Commodities, 132 M.C.C. 485, 490 (1981), (aff'd sub nom, Refrigerated Transport Co. v. I.C.C., 673 F.2d 1196 (11th Cir.1982); see also Port Norris Express Co. v. I.C.C., 729 F.2d 204 (3d Cir.1984) (ICC may not justify grant of authority "purely on policy grounds but must base its decision on record evidence") (quoting Port Norris Express Co. v. I.C.C., 687 F.2d 803, 809-11 (3d Cir.1982)). Otherwise, an applicant could receive ICC authority simply by asserting that several goals of the national transportation policy since the 1980 Act would be served by granting its application. Were we to affirm the Order we would be allowing the Commission to disregard its own admonition that "Congress wanted the particular facts of each case to be looked at," Green Field, 132 M.C.C. at 489, and shirking our responsibility under the APA.
 
 
 22
 The cases amply support our decision. Applications under the 1980 Act have been denied to the extent the service proposed exceeded the public need demonstrated or reasonably to be inferred.[5] Likewise, courts have affirmed grants of authority that were vigorously opposed, where the geographic scope of the grants more reasonably conformed to the public need shown.[6]
 
 
 23
 In summary, we can find no substantial evidence in the record of public need for the statewide authority granted. The evidence submitted by the parties since our prior decision consists largely of verified statements disputing the status of a civil action against applicant's president, which alleges fraud, misrepresentation and embezzlement. Applicant has placed in the record no more "hard information" regarding public need than we reviewed in our previous decision. The Commission's Order, while a finer rationalization than its predecessors, cannot cure the application's deficiency of need evidence.
 
 2. Fitness
 
 24
 In Containerfreight I, we held that the Commission had not discharged its statutory responsibility to weigh the conflicting fitness evidence before it. 685 F.2d at 333. We referred in particular to a former protestant's civil complaint against applicant's president, Mr. James Manlowe, alleging fraud, misrepresentation and embezzlement, and petitioners' charges before the Commission that Manlowe had misappropriated funds from another carrier and made false statements in his application. Id.
 
 
 25
 Before issuing a certificate of public convenience and necessity, the Commission must find, in addition to public need, that the applicant is fit, willing and able to provide the transportation to be authorized. 49 U.S.C. Sec. 10922(b)(1)(A). This "fitness" inquiry encompasses three factors: (a) the applicant's financial ability to perform the service it seeks to provide; (b) its capability to properly and safely perform the proposed service, and (c) its willingness to comply with the Interstate Commerce Act and regulations promulgated thereunder. Curtis, Inc. v. I.C.C., 662 F.2d 680, 685 (5th Cir.1981) (quoting Eagle Motor Lines, Inc., Investigation and Revocation of Certificates, 117 M.C.C. 30, 35 (1972)).
 
 
 26
 The parties' dispute centers on the third factor, moral fitness. The Commission inquires into this factor in order "to protect the public 'from carriers whose conduct demonstrates an unwillingness to operate in accordance with the requirements of regulation.' " Containerfreight I, 685 F.2d at 332-33 (quoting Speedway Carriers, Inc., Extension--Pesticides, 128 M.C.C. 60, 66 (1977)).
 
 
 27
 The initial burden of showing fitness, like that of showing public need, rests on the applicant. Steere Tank Lines, 724 F.2d at 475. Manlowe has made out a prima facie case of fitness. Because Manlowe was a newly-formed applicant, the Commission was unable to examine directly its past experience with the motor carrier. The application described Mr. Manlowe's experience in the transportation field with another carrier, and his familiarity with the governing regulations. T.R. 1, Appendix at 2. The three supporting shippers also attested to their favorable experiences with Manlowe. T.R. 1 at 7, 11, 15. Determining applicant fitness is "peculiarly within the discretion of the Commission," International Detective Service, Inc. v. United States, 346 F.Supp. 608, 613 (D.R.I.1972), and it was within the Commission's expertise to treat this evidence as meeting Manlowe's threshold burden of showing fitness. See Lodi Truck Service, Inc. v. United States, 706 F.2d 898, 901 & n. 3 (9th Cir.1983).
 
 
 28
 To rebut Manlowe's showing of fitness, petitioners relied on the civil complaint and their allegations before the Commission. The Commission found petitioners' allegations insufficient to carry their burden, and the question facing us is whether this decision took account of all relevant evidence.
 
 
 29
 We find that the Commission's latest Order does engage in a genuine weighing of the evidence regarding Manlowe's fitness. Since Containerfreight I, the Commission has received additional evidence from the parties. In verified statements, the applicant denied the charges and questioned the protestants' motives in making them. Having considered the crossfire of accusations, the Commission concluded:
 
 
 30
 In this proceeding, we have not been presented with any evidence of misconduct by the applicant. Rather, we have of record only bare, unsubstantiated allegations of misconduct....
 
 
 31
 As the only fact we have is the filing and pendency of the civil action, we cannot conclude that applicant is not fit to receive authority. Of course, it may well be that the acts allegedly attributable to applicant's president, if ultimately proven as fact, will show misconduct by him that bears on applicant's fitness. If so, the Commission has available appropriate remedies to pursue at that future time to ensure protection of the public, ... However, we cannot take action now in this proceeding against applicant merely on the possibility of potential harm to the public discernible only from unproven charges in a civil complaint action.
 
 
 32
 Order at 5.
 
 
 33
 The civil complaint against Manlowe in the Superior Court for the City and County of San Francisco, filed on January 16, 1981, has still not moved forward. There is no evidence in the record that counsel has even filed the "At Issue Memorandum" which is necessary to place that action on the "Civil Active List" of the Superior Court. See Cal.R. of Ct., Rule 206.
 
 
 34
 In Containerfreight I, we declared that the civil complaint "constitute[d] a cloud on Manlowe's fitness which would have to be resolved, either in the civil proceeding or by the Commission, if fitness were to be found." 685 F.2d at 333. Given the inactive posture of the civil complaint, the Commission's refusal to regard unsubstantiated allegations as "hard information" or record evidence of Manlowe's unfitness is not unreasonable. We must therefore affirm the Commission's finding as to fitness.
 
 
 35
 Surely where the record discloses actual applicant wrongdoing there need be no conviction in the record for the Commission to consider and give appropriate weight to evidence of unlawful conduct. Curtis, Inc., 662 F.2d at 688. Furthermore, we agree with Chairman Taylor's forceful concurring statement that if petitioners established their allegations of Manlowe's misconduct as fact, this would have bearing on his fitness. See Order at 8. Our holding today simply recognizes that incorporating an allegation into a civil lawsuit proves nothing about the allegation's veracity. Any other holding would encourage protestants to file civil actions they had no intention of pursuing, simply for their evidentiary value in Commission proceedings.
 
 
 36
 B. Lawfulness of Commission Proceedings on Remand
 
 
 37
 Petitioners contend that the Commission erred in reopening its proceedings to receive additional evidence before this court's mandate issued. We conclude that this was harmless error insufficient to taint the Commission's review.
 
 
 38
 Petitioners' first argument is that this court's gaining jurisdiction somehow ousted the Commission's usual ability to reopen proceedings. This argument is misconceived. First, the tenor of our decision in Containerfreight I plainly invited the Commission to solicit additional evidence. See 685 F.2d at 333. Secondly, the Commission is empowered by statute to reopen a proceeding "at any time" to supplement the record. 49 U.S.C. Sec. 10322(g)(1). The Supreme Court has confirmed the Commission's broad power to reopen proceedings even after they have become administratively final. See American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 540-41, 90 S.Ct. 1288, 1293-94, 25 L.Ed.2d 547 (1970). Furthermore, "[t]his power of the Commission to reconsider a prior decision does not necessarily collide with the judicial power of review .... It does mean that thereafter the Commission is 'without power to act inconsistently with the court's jurisdiction.' " Id. at 541, 90 S.Ct. at 1294 (quoting Inland Steel Co. v. United States, 306 U.S. 153, 160, 59 S.Ct. 415, 419, 83 L.Ed. 557 (1938)). The Commission's reopening of its proceedings, far from being inconsistent with our decision in Containerfreight I, was invited by it.
 
 
 39
 The petitioners' second argument, based upon Fed.R.App.P. 41, is also unavailing. Rule 41(a) states that if a circuit court denies a petition for rehearing of one of its orders, the court's mandate shall not issue until seven days after entry of the denial. The Commission's reopening order of October 21, 1982 came only three days after we denied Manlowe's petition for rehearing. But the relevant decisions from the Commission's perspective--to forego its own petition for rehearing, and to reopen its docket proceeding--both occurred within a day of October 5, 1982. Petitioners do not allege that the Commission reopened its proceedings before our denial of Manlowe's petition for rehearing. Their argument that the technical infringement of Rule 41 revealed an intent on the part of the Commission to evade our prior decision, rather than to get on with the business of complying with it, simply is not plausible on the facts of this case.
 
 
 40
 Petitioners do not explain how the Commission's premature reopening of its docket proceeding prejudiced them in any way. As the prevailing party in Containerfreight I, petitioners do not contend, for example, that they were cheated of four days in which to file a motion for stay of our mandate pending certiorari.[7] Petitioners themselves acknowledge the possibility that this "transgression ... is of such a technical nature as to be discounted." For these several reasons, we cannot agree that the Commission review in the reopened proceeding was somehow tainted.
 
 
 41
 In making their Rule 41 argument, petitioners resort exclusively to cases where a lower court's proceedings on remand were voidable because they preceded issuance of the appellate court's mandate. See United States v. Howe, 280 F. 815 (2d Cir.), cert. denied, 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922); Casner v. San Diego Trust and Savings Bank, 34 Cal.App.2d 524, 94 P.2d 65 (1938). Our discussion above emphasizes the different role of judicial review of agency decisions. The Commission's proceedings on remand were lawfully conducted.
 
 
 42
 C. Adequacy of the Commission's Articulation of its Findings
 
 
 43
 Petitioners contend that the Commission's articulation of its findings and the bases thereof was inadequate under the APA, specifically 5 U.S.C. Sec. 557(c)(3)(A). We conclude that, except for its finding of public need,[8] the Commission adequately articulated its findings.
 
 
 44
 We may overturn as "arbitrary and capricious" a finding whose bases the Commission does not adequately explain, even though it may be supported by substantial evidence in the record. See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); Coastal Tank Lines, Inc. v. I.C.C., 690 F.2d 537, 544 (6th Cir.1982). Our conclusion that the Commission's fitness finding is minimally supported by the evidence, therefore, does not make automatic the conclusion that the Commission adequately articulated this finding. See Central Transport, Inc. v. United States, 694 F.2d 968, 972-74 (4th Cir.1982).
 
 
 45
 In this instance, however, the Commission did adequately articulate its fitness finding. When the Commission acknowledged in its Order the existence of the civil action against Manlowe and explained why it could not credit its allegations as "evidence," it minimally satisfied[9] both our previous mandate to weigh the competing fitness submissions, and the APA's requirement of reasoned elaboration. We will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." See Lodi Truck Service, Inc. v. United States, 706 F.2d 898, 901 (9th Cir.1983) (quoting Bowman Transportation, 419 U.S. at 286, 95 S.Ct. at 442).
 
 
 46
 The decision of the Commission is VACATED and the matter is REMANDED for proceedings in conformity with this opinion.
 
 
 
 [1]
 The protestants were the four petitioners herein and Nationwide Enterprises, Inc., d/b/a Cal-Pacific Company, which entered voluntary bankruptcy in 1981 and is not a party here
 
 
 [2]
 H.R.Rep. No. 96-1069, 96th Cong., 2d Sess. 3, reprinted in [1980] U.S.Code Cong. & Ad.News 2283, 2285; S.Rep. No. 641, at 1-2 ("The bill represents a middle ground between continuing the status quo, on the one hand, and total deregulation on the other hand.")
 
 
 [3]
 Federal courts of appeals have applied the representative need doctrine to applications filed after the effective date of the 1980 Act, Refrigerated Transport Co. v. I.C.C., 686 F.2d 881, 887 (11th Cir.1982), and the Commission itself has recognized the doctrine's continuing vitality. Id. at 887-88 (citing Art Pape Transfer, Inc., Extension--Commodities in End-Dump Vehicles, 132 M.C.C. 84, 96 (1980)). Like the Fifth Circuit, "[w]e find no indication that Congress intended to eliminate the requirement of a representative showing of public need or to lessen this particular burden previously on applicants seeking geographically broad authority." Id. at 888
 
 
 [4]
 Although the Commission declined to specify the "informational elements" necessary to show need, it did advise that "carriers can put forth innovative rate proposals, means by which the new authority would help rationalize their operations and make them more efficient, the amount of fuel likely to be saved, small communities and rural areas to be served, or marketing surveys showing prospective customers ..." Pre-Fab, 132 M.C.C. at 413. Joining the Commission, "[w]e reiterate that some hard information or genuine proposal is required. Mere assertions alone are insufficient." Id. at 414
 
 
 [5]
 See, e.g., C & H Transportation Co. v. I.C.C., 704 F.2d 850 (5th Cir.1983) (need for nationwide authority not demonstrated where nine of ten supporting shippers stated merely that their shipments moved "between points in the United States" and tenth listed six contiguous states); Refrigerated Transport Co. v. I.C.C., 686 F.2d 881 (11th Cir.1982) (need between points in 33 states not demonstrated by supporting shipper listing of cities in 6 states); Green Field, 132 M.C.C. 485 (1981), aff'd sub nom, Refrigerated Transport Co. v. I.C.C., 673 F.2d 1196 (11th Cir.1982) (nationwide authority justified by public need as to food-related industry products, but existing nonfood authorizations, though broad, not sufficient to justify extension to nationwide scope); Containerfreight I, 685 F.2d 329 (9th Cir.1982); Pre-Fab, 132 M.C.C. 409 (1981) (threshold case for extension to nationwide general commodities authority not established by existing 48-state authority to transport construction materials, where applicant submitted no "hard information or genuine proposal" regarding scope of proposed expansion into non-construction commodities)
 But see RTC Transportation, Inc. v. I.C.C., 731 F.2d 1497 (11th Cir.1984) (affirming grant of authority between points in Georgia, Alabama, Florida, Texas and Tennessee based upon four shippers' statements evidencing need between several cities in each of three states, but only one city in Texas and Tennessee).
 
 
 [6]
 See, e.g., C & H Transportation Co. v. I.C.C., 704 F.2d 834, 844-46 (11th Cir.1983) (nationwide grant narrowly justified where business practices of several supporting shippers precluded precise specification of destination points, and other shippers specifically listed 30 states scattered throughout contiguous 48 states); Steere Tank Lines v. I.C.C., 703 F.2d 927 (5th Cir.1983) (Commission's "carefully drawn four-state-nonradial/two-state-radial authority" justified where supporting shippers specifically mentioned more than 40 points in the four-state area)
 The respondents' reliance on Lodi Truck Service, Inc. v. United States, 706 F.2d 898 (9th Cir.1983) is misplaced. The court there explicitly distinguished Containerfreight I. See id. at 900 n. 2, 901 n. 4. Respondents have placed in the record no additional hard evidence of need not before us in Containerfreight I. Lodi, therefore, remains factually distinguishable.
 
 
 [7]
 Rule 41(a) provides the seven-day grace period chiefly for this purpose. See 21 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Sec. 3987 (1977)
 
 
 [8]
 Our holding that the need finding was unsupported by substantial evidence means, of course, that we need not reach the question whether that finding would have met the APA standard of reasoned elaboration
 
 
 [9]
 A more active adjudicative role by the Commission would have given its fitness finding not only a stronger evidentiary basis, as we emphasize in our discussion, but also would probably have resulted in an order more than "minimally" adequate under APA Sec. 557(c)(3)(A)