961 F.2d 217
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sudhir SAHNI; William DeBernardi, Co-Trustees, Plaintiffs-Appellants,
v.
Manuel LUJAN, et al; Clark County, Defendants-Appellees.
 No. 91-15398.
 United States Court of Appeals, Ninth Circuit.
 Argued March 9, 1992.
Submission Deferred March 24, 1992.
Resubmitted April 16, 1992.
Decided April 27, 1992.
 
 Before NOONAN, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sudhir Sahni and William DeBernardi, trustees of the Ray C. Nordstrom Trust ("trustees"), appeal the district court's summary judgment in favor of the Secretary of the Interior and several directors of the Bureau of Land Management ("BLM") (the "federal appellees"), and Clark County, Nevada. Ben Cohen and Ray C. Nordstrom filed an action in the district court challenging the Interior Board of Land Appeals' ("IBLA's") rejection of their application to redeem transferable homesteading rights--Soldiers Additional Homestead ("SAH") scrip. The district court, after remand and supplemental briefing, agreed with the IBLA that (1) the trustees had failed to meet their burden of establishing a proper claim of title to create a valid homestead right, and (2) even if the claim was valid, the trustees were not entitled to homestead any federal land of their choosing. We have jurisdiction over the timely appeal pursuant to 28 U.S.C. § 1291 (1988). We affirm.
 
 JURISDICTION
 
 3
 The federal appellees have pointed out a potential defect in our subject matter jurisdiction over this case. The federal appellees note that Clark County, in response to the trustees complaint in the district court, pled both counterclaims and cross-claims. Clark County sought (1) general, special, and punitive damages, (2) nullification of the trustees' claimed interest, (3) indemnification, and (4) attorneys' fees and costs of suit.
 
 
 4
 The district court issued an order on February 21, 1991, which stated the January 14, 1991 summary judgment order "applies to all defendants in the above-entitled action." The federal appellees argue the summary judgment order, despite the February 21, 1991 order applying the analysis to all parties, is not final because it did not resolve the counterclaims or cross-claims. "A decision is final under 28 U.S.C. § 1291 if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Arizona State Carpenters Pension Trust Fund v. Miller, 938 F.2d 1038, 1039 (9th Cir.1991) (quotations omitted). Naturally, a judgment is not final if it leaves active claims unresolved. See Sierra Club v. Dept. of Transp., 948 F.2d 568, 572 (9th Cir.1991) (summary judgment only partially disposed of claims and was not appealable until Fed.R.Civ.P. 54(b) was complied with); Wolf v. Banco Nacional de Mexico, S.A., 721 F.2d 660, 662 (9th Cir.1983) (judgment did not consider two claims which remained live, therefore the summary judgment was not final).
 
 
 5
 Contrary to Clark County's assertion, the counterclaims and crossclaims were not moot but were ripe for decision. Clark County would not be entitled to damages for vexatious litigation or interference with property until it was determined that the trustees asserted homestead interest was invalid. Clark County's entitlement to damages was not addressed in the district court's summary judgment orders. Because the summary judgment order did not conclusively terminate the litigation on all issues, it merely constituted a partial summary judgment. The district court did not certify the partial summary judgment pursuant to Fed.R.Civ.P. 54(b). Without certification, the order would ordinarily be unreviewable.
 
 
 6
 We nonetheless conclude we have jurisdiction to hear the trustees' appeal. A partially dispositive order may be treated as final "when that portion of the case that remained in the district court has subsequently been terminated." Uniol, Inc. v. E.F. Hutton & Co., Inc., 809 F.2d 548, 554 (9th Cir.1986), cert. denied, 484 U.S. 823 (1987). We have previously noted the lack of finality can be avoided by "simply dismissing [the] remaining claim and defenses without the option to pursue them should this court reverse." Cheng v. Commissioner, 878 F.2d 306, 311 (9th Cir.1989).
 
 
 7
 Although we have previously dismissed appeals where the order is not final, we choose in this case to follow the approach of the Second Circuit. In Hanlin v. Mitchelson, 794 F.2d 835, 837 (2d Cir.1986), the court allowed a counterclaim to be withdrawn in the district court after oral argument in the case, thereby terminating the non-final issues.
 
 
 8
 At oral argument, Clark County manifested a willingness to dismiss the claims in the district court.[1] We twice deferred submission of the case to facilitate this action. We have received notification that Clark County has dismissed the claims that remained active in the district court. The exception to finality for subsequent termination of non-final claims is therefore applicable. We now have jurisdiction to determine the substantive aspects of this case.
 
 STANDARD OF REVIEW
 
 9
 The Department of the Interior "has been granted plenary authority over the administration of public lands ... It is that agency which has been entrusted with the initial determination as to the validity of claims against such lands, such determination being subject to judicial review." Adams v. United States, 318 F.2d 861, 866 (9th Cir.1963). "Determinations by the BLM and the IBLA must be upheld unless arbitrary, capricious, an abuse of discretion, or not in accordance with law." Gilmore v. Lujan, 947 F.2d 1409, 1411 (9th Cir.1991) (quotation omitted). Although our review function is very narrow, we must search the record to satisfy ourselves that "the decision was based on a consideration of the relevant factors." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1970).
 
 DISCUSSION
 A. SCOPE OF REMAND
 
 10
 The trustees argue the IBLA exceeded the scope of the district court's remand when it arrived at its decision based on a new line of reasoning. The IBLA initially determined the application was not supported by adequate proof that the entryman and the soldier were the same person. Cohen and Nordstrom filed suit in the district court seeking review of this decision. In the district court, they argued for the first time that the SAH scrip was validated by the 1894 Certification Act. The district court determined that remand was the appropriate course of action to allow the agency to address an issue that had not previously been raised in the agency action. The court also concluded the IBLA had abused its discretion in not considering significant newly discovered evidence, and determined the case had to be remanded for the IBLA to consider the evidence. The district court noted several areas of review which it determined needed additional agency explanation. The remand did not explicitly or implicitly limit the IBLA's consideration of other pertinent issues.
 
 
 11
 The IBLA determined it was not limited by the remand in its consideration of other issues affecting the validity of the SAH scrip application. Thereafter, the IBLA held the SAH scrip invalid on a new ground--the assignment and supporting affidavits from Jones to Moses were insufficient evidence of a transfer because they were unsigned versions with typewritten names in place of signatures. The district court subsequently determined the IBLA was not required to limit its inquiry to matters set forth in the decision of the court.
 
 
 12
 A district court can remand a case to an agency to require the agency to "take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. ----, 110 S.Ct. 2668, 2680 (1990). "Wide discretion ... must be left to an agency ... in a matter of this kind--a matter of adjusting the process of inquiry to the exigencies of a particular situation as they appear to administrators immediately acquainted with the course of proceedings." Communist Party v. Subversive Activities Control Bd., 367 U.S. 1, 29 (1961). If a remand is broadly written and contains no language which expressly or impliedly forecloses consideration of an issue, the agency is free to rule upon other relevant issues. See Sierra Club v. Penfold, 857 F.2d 1307, 1312 (9th Cir.1988).
 
 
 13
 The district court correctly concluded the IBLA properly considered the chain of title. In the IBLA's first decision, it was precluded from considering the chain of title because once it determined the entryman and the soldier were different persons such analysis was unnecessary. The remand was not narrowly tailored, but listed specific areas of inquiry merely as guidance to the IBLA. The decision of the IBLA did not conflict with the district court's remand, but was consistent with its purpose. The IBLA had broad discretion to consider any ground that would impact the validity of the SAH scrip. No error is present in the IBLA's consideration of new issues on remand.
 
 B. THE IBLA'S DECISION
 1. Due Process
 
 14
 The district court, concerned that the IBLA's decision on an unexpected ground created a due process violation, allowed the trustees an opportunity to present additional evidence that would have influenced the IBLA's decision on the validity of the Jones-Moses assignment. After reviewing the evidence submitted by the trustees, the district court concluded it was duplicative of evidence already before the IBLA; no deprivation of due process had occurred. The trustees now argue the district court should have remanded the action to the IBLA for consideration of the evidence.
 
 
 15
 If errors occurred in the administrative process, a complaining party must show harm or prejudice arising from the procedural abnormality before the case will be remanded to the agency for further proceedings. See, e.g., Containerfreight Corp. v. United States, 752 F.2d 419, 427-28 (9th Cir.1985). Despite the trustees attempts to demonstrate prejudice, they have failed to convince us the district court erred in refusing to remand for further proceedings. Mere allegations of government misconduct do not create prejudice. The trustees' arguments require us to assume facts not established anywhere in the record. This we will not do.
 
 
 16
 The district court's procedure was an effective utilization of judicial resources. Instead of requiring further proceedings in the IBLA, the approach employed by the court was a proper means to identify potential constitutional defects in the IBLA's decision. No error has been demonstrated.
 
 2. Estoppel
 
 17
 The trustees argue the Department of the Interior should be estopped from challenging the validity of the SAH scrip because, in reliance on the BLM's position on remand to the IBLA that the SAH scrip was valid, the trustees did not brief the dispositive issue. The district court correctly concluded that estoppel was inapplicable because the trustees had failed to establish "affirmative misrepresentation or affirmative concealment of material fact by a government agent," a required element of estoppel against a government entity. See S & M Investment Co. v. Tahoe Regional Planning Co., 911 F.2d 324, 329 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 963 (1991); Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 384 (1990).
 
 
 18
 Although it is true the Department of the Interior may have possessed a file containing documents pertinent to the scrip claim, neither its contents nor its location are currently known. The trustees base their arguments of governmental misconduct solely on what they hypothesize happened to the scrip files. Unsupported speculation is insufficient however to support an estoppel claim.
 
 
 19
 No harm has been demonstrated by the trustees' failure to brief the assignment issue in reliance on the concessions of the BLM that the signatures were authentic and the soldier and entryman were the same individual. The IBLA was not estopped from considering an issue contrary to a position espoused by the BLM. Any shortcomings in the trustees' briefing of the IBLA on the assignment issue was cured by the district court's subsequent opportunity to adequately present their claims.[2] The trustees have failed to prove affirmative misconduct or serious injustice. Estoppel is therefore inapplicable and the district court did not err in so finding.
 
 3. Jones-Moses Assignment
 
 20
 As noted by the district court, the IBLA has required the claimant in past disputes to establish the identities of the soldier/entryman and subsequent assignors through affidavits of two witnesses having personal knowledge of the facts. See William E. Moses, 31 L.D. 320, 321 (1902). The IBLA required the trustees to comply with this burden or provide "other facts ... tending to establish such identity." The district court acknowledged that it was burdensome to prove an event that occurred over a hundred years ago, but concluded this fact did not diminish the quantum of proof necessary.
 
 
 21
 The only documents before the IBLA regarding the assignment of the claim from Jones to Moses were either unsigned documents or documents containing the typed names of the individuals instead of signatures. Although the trustees allege the government wrongly concealed the original assignment documents, no credible evidence has been presented beyond mere inferences to convince us the government actually possessed these documents and the government intentionally withheld them.
 
 
 22
 Because the IBLA is entrusted with implementing congressional policies, the quantum of proof required to establish an assignment falls within the agency's discretion. See United States v. Alpine Land and Reservoir Co., 887 F.2d 207, 212 (9th Cir.1989) ("in the absence of congressional directives, [the Department of the Interior] can regulate distribution, acquisition, and vested water rights"), cert. denied, --- U.S. ----, 111 S.Ct. 60 (1990); Brennan v. Udall, 379 F.2d 803, 806 (10th Cir.) (Department of the Interior reasonably interpreted a statute where the same interpretation had consistently been applied for fifty years), cert. denied, 389 U.S. 975 (1967). The IBLA's imposition of an exacting standard of proof to establish the Jones to Moses assignment was therefore proper. Based on the evidence before the IBLA and the district court, we conclude the trustees have not established that the IBLA's decision was arbitrary, capricious, an abuse of discretion, or not in accordance with law.
 
 4. 1894 Certification Act
 
 23
 The trustees allege the SAH scrip was certified within the meaning of the Act of August 18, 1894, 43 U.S.C. § 276 (repealed 1976). The 1894 Act validated three categories of certificates issued prior to 1894: "(1) those issued under rules and regulations of the General Land Office under 43 U.S.C. § 274; (2) those issued pursuant to decisions or instructions of the Secretary as of March 10, 1877; and (3) those pursuant to decision or instructions of the Secretary or the Commissioner after March 10, 1877." Cord v. Morton, 449 F.2d 327, 329 (9th Cir.1971).
 
 
 24
 To support their certification argument, the trustees rely on a computer-enhanced reconstruction of a 1905 document and the General Land Office's June 30, 1876 cancellation of Jones' entry. We reject their certification claim for two reasons. First, the trustees have not demonstrated any relation between the June 30, 1876, cancellation and the 1894 Act. They do not even attempt to discuss how a cancellation can be the equivalent of a certification under the Act. Without more, the mere assertion that a certificate was issued is meaningless. Second, even assuming the 1905 document constituted such a certificate, it is not immunized by the 1894 Act because it was issued after 1894. See Cord, 449 F.2d at 329. Proof of a valid assignment from Jones to Moses would still need to be produced by the trustees. The IBLA did not err in concluding no certificate was issued pursuant to the 1894 Act.
 
 CONCLUSION
 
 25
 Because we conclude the trustees cannot establish a valid assignment and no further hearings would aid validation of the chain of title, it alleviates our need to consider (1) whether John Jones the entryman and John Jones the soldier were the same person, and (2) the trustees' claimed right to select particular land to satisfy their SAH claim. The IBLA did not err on remand from the district court in considering issues precluded by the analysis in their initial decision. The district court was not required to remand the action to the IBLA a second time where additional evidence revealed no due process violation had occurred. The trustees have failed to prove that a certificate was issued under the 1894 Act or to prove a valid chain of title to the SAH scrip.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We conclude this action does not conflict with Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). The crossclaims and counterclaims were not part of the "aspects of the case involved in the appeal." Id
 
 
 [2]
 The trustees argue that if afforded a hearing they would present affidavits and evidence to support their claim. The district court gave the trustees thirty days, extended four times, to discover and present relevant evidence. Because the trustees failed to demonstrate injury, after ample opportunity to do so in the district court, further hearings would be useless